[No. B163370. Second Dist., Div. Six. Sept. 16, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL ANGEL CORELLA, JR., Defendant and Appellant.

462

## COUNSEL

Robin L. Unander, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Marc J. Nolan, Jaime L. Fuster, Tita Van Nguyen and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PERREN, J.**—Miguel Angel Corella, Jr., appeals his conviction for corporal injury to a spouse. (Pen. Code, § 273.5, subd. (a).) Immediately after the incident, Corella's wife told a 911 operator that her husband had hit her. She repeated the accusation to the police officer and medical personnel who responded to the 911 call. At the preliminary hearing, Mrs. Corella told a different story exculpating her husband and testifying that her statement to the police was false. When cautioned concerning self-incrimination, Mrs. Corella refused to complete her testimony, and her prior preliminary hearing testimony was stricken. Mrs. Corella did not testify at trial.

At trial, the court admitted Mrs. Corella's inculpatory statements to the police as spontaneous statements (Evid. Code, § 1240),[1] but excluded her exculpatory preliminary hearing "testimony" because it had been stricken. Corella claims the trial court erred in both rulings. He contends that the admission of his wife's statements to the police violated his constitutional right of confrontation because they did not qualify as section 1240 spontaneous statements, and were "testimonial" statements under the recent case of *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354] (*Crawford*). He also contends that Mrs. Corella's testimony at the preliminary hearing was admissible under section 1202 as an inconsistent statement by a hearsay declarant.

■ We conclude that the admission of Mrs. Corella's statements to the police did not violate Corella's right of confrontation because they qualified as spontaneous statements and were not testimonial statements under *Crawford*. ■ We also conclude that the trial court erred in excluding Mrs. Corella's statements at the preliminary hearing, and that the error was prejudicial because it resulted in the jury hearing only half of the critical evidence. Accordingly, we reverse.

---

[1] All further statutory references are to the Evidence Code unless otherwise stated.

## FACTS AND PROCEDURAL HISTORY

At 11:30 p.m., Police Officer Penny Diaz was dispatched to a motel where Corella and his wife Kimberly Corella were living. Officer Diaz saw Mrs. Corella in the parking lot. She was crying and distraught, and appeared to be in physical pain. She told Officer Diaz that appellant had punched her on her head and in her ribs and her private area. Diaz felt a bump on Mrs. Corella's head. Mrs. Corella told Officer Diaz that, while visiting friends before the incident, Mrs. Corella told Corella not to smoke marijuana because it would violate his probation. Corella became angry and, after the couple drove home, he decided to drive away on his own. Mrs. Corella was worried because Corella had been drinking alcohol. When she tried to prevent him from leaving by hiding the car keys, Corella struck her.

Mrs. Corella had related the same facts during a 911 telephone call placed before Officer Diaz arrived at the scene. She told the same facts a third time to a paramedic who arrived at the scene after Mrs. Corella's conversation with Officer Diaz.

Corella was charged with corporal injury to a spouse. The information also alleged that he had served a prior prison term. (Pen. Code, § 667.5, subd. (b).) At Corella's jury trial, Officer Diaz testified to the statements made to her by Mrs. Corella, and a recording of Mrs. Corella's 911 telephone call was played for the jury. The paramedic at the scene testified that Mrs. Corella asked for pain medication due to the bump on her head. The paramedic also testified that it was likely that the bump had been inflicted shortly before the paramedic's examination.

In addition, a woman who had a romantic relationship with Corella testified that, in November 2000, she and Corella had been drinking alcohol with his parents when Corella became upset and attempted to drive off in the woman's car. When the woman tried to take the keys to the car away from him, Corella punched her and continued to punch her after Corella's stepfather stepped in to break up the altercation.

The jury convicted Corella of the offense, and the trial court found the allegation of a prior prison term to be true. Corella was sentenced to three years in prison for the offense, plus one year for the enhancement.

## DISCUSSION

### I. *Admission of Statements to Police and 911 Recording*

Corella contends that the admission of evidence of Mrs. Corella's statements to the 911 operator and Officer Diaz violated his constitutional right of

confrontation. (U.S. Const., 6th Amend.) He argues that the statements did not qualify for admission under the spontaneous statement exception to the hearsay rule. (§ 1240.) He also argues that, even if admissible as spontaneous statements, the statements are testimonial and inadmissible under *Crawford*. We disagree. Mrs. Corella's statements were nontestimonial, and generally qualified as section 1240 spontaneous statements.

"Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." (§ 1240.) As interpreted by our Supreme Court, " '. . . (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.' " (*People v. Poggi* (1988) 45 Cal.3d 306, 318 [246 Cal.Rptr. 886, 753 P.2d 1082].)

Corella concedes that Mrs. Corella's statements describe her perception of recent events while stress dominated her reflective powers, but contends that the statements did not "relate to the circumstance of the occurrence preceding it." (*People v. Poggi, supra*, 45 Cal.3d at p. 318.) He argues that the assertions regarding marijuana, probation, and intoxication had no connection with why, how or whether Corella struck his wife.

Mrs. Corella's statements that she hid the car keys to prevent Corella from leaving their home in an intoxicated condition were a description of the event that culminated in Corella's violent act and were closely connected with the occurrence at issue. The statements were also an unreflective explanation of her perception of the reasons why Corella hit her. There was no abuse of discretion in admitting the evidence under section 1240. (See *Montez v. Superior Court* (1992) 4 Cal.App.4th 577, 583 [5 Cal.Rptr.2d 723].)

Mrs. Corella's statements that Corella was smoking marijuana and was on probation, however, did not "narrate, describe, or explain" the commission of the offense or any relevant circumstance under which the offense was committed. (*People v. Poggi, supra*, 45 Cal.3d at p. 318; see also *People v. Raley* (1992) 2 Cal.4th 870, 893 [8 Cal.Rptr.2d 678, 830 P.2d 712].) The statements revealed Mrs. Corella's state of mind by describing an argument that occurred on the same day, but did not tend to prove any disputed issue in the case.

Although error, the admission of Mrs. Corella's statement regarding marijuana and probation was, standing alone, harmless under both the state "reasonable probability" and federal "beyond a reasonable doubt" standards of prejudice. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Mrs. Corella's statement that Corella struck her when she hid the car keys to prevent his leaving was admissible and constituted strong evidence of guilt. The statement was clear, unequivocal, and was repeated three times, first to the 911 operator, then to Officer Diaz, and finally to the paramedic at the scene. Also, both Officer Diaz and the paramedic observed the bump on Mrs. Corella's head, and the paramedic testified that the bump was recently inflicted. In addition, there was testimony from the victim of a similar prior act of domestic abuse by Corella. Beyond a reasonable doubt, the jury would not have believed the offense was more likely to have occurred because Corella was on probation and smoked marijuana earlier on the day of the offense. (*Chapman*, at p. 24.)

■ Even if admissible as spontaneous statements, the admissibility of Mrs. Corella's statements to the 911 operator and Officer Diaz must be analyzed in light of *Crawford*.[2] Prior to *Crawford*, the admission of a hearsay statement under a firmly-rooted exception to the hearsay rule or when there were indicia of reliability did not violate a defendant's right of confrontation. (*Ohio v. Roberts* (1980) 448 U.S. 56, 66 [65 L.Ed.2d 597, 100 S.Ct. 2531].) After *Crawford*, a "nontestimonial" hearsay statement continues to be governed by the *Roberts* standard, but the admission of a "testimonial" hearsay statement constitutes a violation of a defendant's right of confrontation unless the declarant is unavailable to testify at trial and the defense had a prior opportunity for cross-examination. (*Crawford, supra*, 124 S.Ct. at pp. 1369, 1374.)

Corella contends that his wife's statements to the 911 operator and Officer Diaz were inadmissible because the statements were "testimonial," Mrs. Corella was unavailable to testify at trial, and there was no opportunity to cross-examine her prior to trial. Respondent does not dispute her unavailability or the absence of an opportunity for cross-examination, but contends that Mrs. Corella's statements were nontestimonial.[3] We agree with respondent that the statements were properly admitted under the *Crawford* standard.

Although *Crawford* does not define the term, it states that a testimonial hearsay statement includes " 'ex parte in-court testimony' " such as

---

[2] The initial briefing in the instant case was completed prior to *Crawford*. We requested and obtained letter briefs covering the effect of *Crawford*.

[3] Although respondent does not contend that Mrs. Corella was available to testify at trial in its supplemental brief, respondent questioned her unavailability in its original briefing. We discuss that subject in part II of this opinion.

" '. . . affidavits, custodial examinations, prior testimony . . . , or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' " as well as " 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' " and " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " (*Crawford, supra,* 124 S.Ct. at p. 1364.) The court also states that "at a minimum" the term "testimonial" applies "to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." (*Id.,* at p. 1374.)

*Crawford* also chooses not to define the term "testimonial police interrogation" but analogizes a police interrogation to the official pretrial examination of suspects and witnesses by English justices of the peace before England had a professional police force. (*Crawford, supra,* 124 S.Ct. at pp. 1359, 1364–1365 & fn. 4.) The analogy indicates that, under *Crawford,* a police interrogation requires a relatively formal investigation where a trial is contemplated.

The relative formality of a *Crawford* police interrogation is further shown by facts of the case. In *Crawford,* the police questioned the defendant and his wife after the defendant's arrest as a suspect in a stabbing. The defendant admitted the incident but claimed self-defense. His wife, who was present at the scene, did not support the self-defense claim. (*Crawford, supra,* 124 S.Ct. at p. 1357.) When the wife became unavailable to testify at trial, her statement to the police was admitted as a statement against penal interest. (*Id.,* at p. 1358.) The Supreme Court concluded that the wife's statement was given during a police interrogation and was testimonial because it involved a "recorded statement, knowingly given in response to structured police questioning . . . ." (*Id.,* at p. 1365, fn. 4.)

The section 1240 spontaneous statements made by Mrs. Corella to the 911 telephone call and Officer Diaz, however, were not given in a police interrogation because they were not "knowingly given in response to structured police questioning," and bear no indicia common to the official and formal quality of the various statements deemed testimonial by *Crawford.* Mrs. Corella, not the police, initiated the 911 call to request assistance. As has been stated in a New York case, a "testimonial statement is produced when the government summons a citizen to be a witness; in a 911 call, it is the citizen who summons the government to her aid." (*People v. Moscat* (2004) 3 Misc.3d 739 [777 N.Y.S.2d 875, 879].) Not only is a victim making a 911 call in need of assistance, but the 911 operator is determining the appropriate response. The operator is not conducting a police interrogation in contemplation of a future prosecution.

■ In addition, when Officer Diaz arrived at the scene in response to Mrs. Corella's 911 call, Mrs. Corella's spontaneous statements describing what had just happened did not become part of a police interrogation merely because Officer Diaz was an officer and obtained information from Mrs. Corella. Preliminary questions asked at the scene of a crime shortly after it has occurred do not rise to the level of an "interrogation." Such an unstructured interaction between officer and witness bears no resemblance to a formal or informal police inquiry that is required for a police "interrogation" as that term is used in *Crawford*. (See *Crawford, supra*, 124 S.Ct. at p. 1364; see also *Hammon v. State* (Ind. 2004) 809 N.E.2d 945, 952.)

■ Moreover, it is difficult to identify any circumstances under which a section 1240 spontaneous statement would be "testimonial." The rationale of the spontaneous statement exception to the hearsay rule is that the utterance must be made without reflection or deliberation due to the stress of excitement. (See *People v. Poggi, supra*, 45 Cal.3d at p. 318.) Mrs. Corella's statements were ultimately used in a criminal prosecution, but statements made without reflection or deliberation are not made in contemplation of their "testimonial" use in a future trial.[4]

## II. *Exclusion of Testimony Stricken from Preliminary Hearing*

At the preliminary hearing, Mrs. Corella testified that she injured her head in a fall while she and her son were playing near a Jacuzzi. She admitted that her statement to Officer Diaz "was not true," and that she made the statement out of fear that her husband was going to leave her. Because this testimony might have been a self-incriminating admission of falsely reporting a crime to the police (Pen. Code, § 148.5), the court stopped the hearing and appointed counsel for Mrs. Corella.

When the hearing resumed the next day, Mrs. Corella followed the advice of her appointed counsel and asserted her privilege against self-incrimination. She refused to testify further regarding the charged offense, and moved to strike her earlier testimony because she had not been advised of her rights before testifying. Without objection, the court struck Mrs. Corella's earlier testimony.

Neither the prosecution nor the defense called Mrs. Corella as a witness at trial. Instead, the prosecution relied on hearsay evidence to prove the charged

---

[4] In *People v. Cage* (2004) 120 Cal.App.4th 770, 781–782 [15 Cal.Rptr.3d 846], ■ the Fourth District held that a section 1240 spontaneous statement made by a victim to the police was not testimonial under *Crawford*. Although *Cage* is not a final decision citable as precedent, we agree with its analysis and result.

offense, namely Mrs. Corella's statements to the 911 operator and Officer Diaz. The defense sought to impeach these statements by offering Mrs. Corella's testimony from the preliminary hearing that she lied to Officer Diaz.

Corella contends that the trial court abused its discretion in excluding Mrs. Corella's preliminary hearing testimony because, by contradicting earlier statements to Diaz and the 911 operator, the testimony was admissible as a statement by a declarant inconsistent with another hearsay statement by the declarant that has been admitted at trial. (§ 1202.)[5] We agree. Mrs. Corella's words were stricken as testimony but continued to constitute her "statement." Although the statement was not admissible for its truth, it was admissible to impeach Mrs. Corella's statement to the police.

■ Under section 1202, when a hearsay statement by a declarant who is not a witness is admitted into evidence by the prosecution, an inconsistent hearsay statement by the same person offered by the defense is admissible to attack the declarant's credibility. (*People v. Jacobs* (2000) 78 Cal.App.4th 1444, 1449 [93 Cal.Rptr.2d 783].) Section 1202 creates "a uniform rule permitting a hearsay declarant to be impeached by inconsistent statements in all cases, whether or not the declarant has been given an opportunity to explain or deny the inconsistency." (Cal. Law Revision Com. com., 29B pt. 4 West's Ann. Evid. Code (1995 ed.) foll. § 1202, p. 27.)

The purpose of section 1202 is to assure fairness to the party against whom hearsay evidence is admitted without an opportunity for cross-examination. (*People v. Jacobs, supra,* 78 Cal.App.4th at p. 1449; *People v. Ross* (1979) 92 Cal.App.3d 391, 406 [154 Cal.Rptr. 783].) Here, the prosecution introduced Mrs. Corella's hearsay statements to the police, and Corella sought to introduce contrary hearsay evidence from the same declarant.

Mrs. Corella's admission that she made a false report to the police placed her credibility squarely in issue. On one occasion, she stated that Corella caused the only injury that could be corroborated; then she told an entirely different story. By excluding the second story, the jury was improperly prevented from fully assessing Mrs. Corella's credibility in telling the first story.

■ Respondent asserts that, once stricken from the record, Mrs. Corella's "testimony" at the preliminary hearing ceased to exist and was not admissible

---

[5] Section 1202 provides in pertinent part: "Evidence of a statement or other conduct by a declarant that is inconsistent with a statement by such declarant received in evidence as hearsay evidence is not inadmissible for the purpose of attacking the credibility of the declarant though he is not given and has not had an opportunity to explain or to deny such inconsistent statement or other conduct. Any other evidence offered to attack or support the credibility of the declarant is admissible if it would have been admissible had the declarant been a witness at the hearing. . . ."

under any rule of evidence. We disagree. Although inadmissible as prior testimony, Mrs. Corella's words were uttered and remain as her "statement." Section 1202 applies to "a statement or other conduct," not "testimony," and has been interpreted to cover the impeachment of a declarant whose hearsay statement is in evidence, as distinguished from the impeachment of a witness who has testified. (*People v. Williams* (1976) 16 Cal.3d 663, 668–669 [128 Cal.Rptr. 888, 547 P.2d 1000]; *People v. Jacobs, supra,* 78 Cal.App.4th at p. 1449 .) Striking Mrs. Corella's testimony does not mean the words were not spoken. They were. Corella had the right to present the words to the jury for its consideration of the truth of Mrs. Corella's earlier words. Mrs. Corella gave two versions of the events. By not admitting her preliminary hearing statement, the jury heard only the version proffered by the prosecution.

■ Respondent questions whether Mrs. Corella was unavailable to testify because she was seen in the courthouse during trial. But, section 1202 is not limited to evidence of statements by a declarant who is unavailable to testify at trial, and respondent does not contend otherwise. Section 1202 does not require a preliminary showing of unavailability (see § 240), but, rather, permits impeaching evidence without providing the declarant an opportunity to explain the inconsistency. (*People v. Ross, supra,* 92 Cal.App.3d at p. 406.)

Moreover, although not entirely clear, the record shows that Mrs. Corella was unavailable to testify because she was asserting her privilege against self-incrimination. In addition, at the commencement of trial, the trial court stated, "I would rule that the 911 call is a spontaneous statement and that the victim is unavailable." Later, counsel indicated that Mrs. Corella had been in the courthouse at some point during trial, but the record does not show that she was available to testify at any time during trial.

Respondent argues that the trial court could have excluded Mrs. Corella's statement under section 352 because the jury was likely to consider the statement for its truth, not just for impeachment, and because the statement was inherently untrustworthy. We disagree. The record shows that the trial court did not exclude the evidence under the section 352 standard. A trial court is not required to expressly state that it is weighing prejudice against probative value, but the record must affirmatively demonstrate that the court did so. (*People v. Crittenden* (1994) 9 Cal.4th 83, 135 [36 Cal.Rptr.2d 474, 885 P.2d 887].) Here, the record shows the trial court excluded the statement because it had been stricken from the preliminary hearing and for no other reason.

■ Furthermore, section 1202 embodies the legislative judgment that the jury is able to distinguish between considering hearsay for truth and for impeachment. And, a limiting jury instruction that the statement could only

be considered for impeachment purposes would have been given had the preliminary hearing statement been admitted.

█ Similarly, there was no basis for excluding Mrs. Corella's statement because it was untrustworthy. Unlike some exceptions to the hearsay rule, section 1202 does not require the trial court to consider trustworthiness as a condition of admissibility. (Compare, e.g., § 1230; see *People v. Cudjo* (1993) 6 Cal.4th 585, 607–608 [25 Cal.Rptr.2d 390, 863 P.2d 635].) Additionally, it is the function of the jury, not the court, to determine the credibility of witnesses. (*Cudjo,* at p. 610.)

Respondent also argues that any error in excluding Mrs. Corella's statement at the preliminary hearing was harmless because the statement was inherently untrustworthy and because there was strong evidence of Corella's guilt. We disagree.

As we have stated, determining the credibility of witnesses is a function of the jury. Here, virtually all of the evidence supporting Corella's conviction was in the form of hearsay evidence of Mrs. Corella's statements at the time of the offense. Unquestionably, Mrs. Corella's credibility was the pivotal factor in this case but, because she was neither seen nor heard at trial, the jury did not have the opportunity to gauge her credibility through an assessment of her demeanor and manner of testifying, the detail of the description of the events at issue, and the overall quality of the testimony. (§ 780; see also *People v. Cudjo, supra,* 6 Cal.4th at p. 608.) The inconsistent hearsay statement by Mrs. Corella at the preliminary hearing provided a critical alternative method for the jury to determine her credibility in the absence of her presence as a live witness at trial. The trial court's exclusion of the inconsistent statement was prejudicial because it prevented the jury from making a credibility decision based on all available evidence.

An error by the trial court in ruling on the admission of evidence is generally considered under the *Watson* standard of prejudice, but completely excluding evidence of a defendant's defense theoretically could rise to a constitutional level and require application of the *Chapman* standard. (*People v. Fudge* (1994) 7 Cal.4th 1075, 1102–1103 [31 Cal.Rptr.2d 321, 875 P.2d 36]; see *Chapman v. California, supra,* 386 U.S. at p. 24; *People v. Watson, supra,* 46 Cal.2d at p. 836.) We do not reach this issue because there was prejudice under both the "reasonable probability" standard of *Watson* and the stricter "beyond a reasonable doubt" standard of *Chapman.*

Finally, Corella contends that Mrs. Corella's statement at the preliminary hearing was admissible as an inconsistent statement by a witness. (§ 1235.) We disagree. The statement is inadmissible under section 1235. Mrs. Corella

did not testify at trial and, therefore, could not make a statement that was inconsistent with her testimony as a witness. (*People v. Cudjo, supra,* 6 Cal.4th at p. 616; *People v. Williams, supra,* 16 Cal.3d at pp. 668–669.)

The judgment is reversed.

Gilbert, P. J., and Coffee, J., concurred.