125 P.3d 990 (2005)
131 Wash.App. 71
STATE of Washington, Respondent
v.
James Douglas OHLSON, Appellant.
No. 32112-2-II.
Court of Appeals of Washington, Division 2.
December 28, 2005.
*991 Michelle Bacon Adams, Attorney at Law, Port Orchard, WA, for Appellant.
Randall Avery Sutton, Kitsap Co. Prosecutor's Office, Port Orchard, WA, for Respondent.

PART PUBLISHED OPINION
BRIDGEWATER, J.
¶ 1 James Douglas Ohlson appeals his conviction of two counts of second degree assault. We hold that the victim's out-of-court statements were properly admitted as excited utterances. We further hold that these statements were non-testimonial and did not violate Ohlson's right of confrontation under Crawford v. Washington,[1] and we adopt a per se rule that excited utterances cannot be testimonial. We also hold that there was no prosecutorial misconduct in commenting on Ohlson's custody status at the time of trial because Ohlson, himself, testified that he was in custody and the prosecutor's comments were fleeting and not flagrant or ill intentioned. Lastly, there was sufficient evidence to support Ohlson's conviction. We affirm.

FACTS
¶ 2 On April 16, 2004, L.F. and D.L., two minors, were standing on the sidewalk near the entrance to Lion's Field in Bremerton, Washington, waiting for their mothers to pick them up. As they waited, Ohlson drove by, "[f]lipp[ed]" them off, and yelled, "F[] you, niggers." 1 Report of Proceedings (RP) (Jun. 30, 2004) at 63-64. Ohlson then turned around and began "speeding and braking" near L.F. and D.L., continuing to yell racial epithets. 1 RP at 65. He then left the area.
*992 ¶ 3 Approximately five minutes later, Ohlson returned and drove his vehicle up onto the sidewalk where L.F. and D.L. were standing, causing them to "jump out of the way." 1 RP at 66. L.F. called 911. L.F. testified that she was facing D.L., who was leaning against a pole; had Ohlson continued driving on the sidewalk, he "would have hit the pole." 1 RP at 66. She believed that Ohlson was driving at about 45 miles per hour. L.F. further testified that she was "kind of scared" because she believed that Ohlson had attempted to run them over. 1 RP at 68.
¶ 4 Officer Crystal Gray of the Bremerton Police Department responded to L.F.'s 911 call. Officer Gray testified that she arrived at the scene within five minutes. She stated that L.F. and D.L. were "pretty upset" and "shaken up" and that L.F. was shaking. 1 RP at 91.
¶ 5 Officers Daniel Fatt and Mike Davis, also of the Bremerton Police Department, contacted Ohlson at his home. Ohlson told Officer Davis that he had called D.L. a "nigger" and that he had driven "back and forth" past L.F. and D.L. "[k]ind of recklessly to scare them." 1 RP at 84. Ohlson further stated that at one point during the incident, his vehicle was five feet from D.L.
¶ 6 Ohlson was charged with one count of malicious harassment and two counts of second degree assault, and a jury trial commenced on June 30, 2004. D.L. did not testify.
¶ 7 Officer Gray testified that L.F. and D.L. told her that Ohlson had driven past them several times, yelling racial epithets. Ohlson then swerved "up on to the curb trying to hit them," and they had to "jump out of the way" to avoid being struck. 1 RP at 92. Officer Gray stated that L.F. and D.L. believed that Ohlson had tried to hit them with his vehicle. Ohlson objected to the admission of D.L.'s out-of-court statements; and the court admitted the statements as excited utterances.
¶ 8 Robert Klose, an eyewitness to the incident, also testified. Klose testified that he was standing on his deck across the street from L.F. and D.L. when Ohlson drove by them. He observed Ohlson drive up onto the sidewalk where L.F. and D.L. were standing, causing them to jump out of the way. Klose stated that Ohlson "had to come off the shoulder of the road and then onto the sidewalk" and that he took a "pretty good swipe" at L.F. and D.L. 2 RP (Jul. 1, 2004) at 113-14.
¶ 9 Ohlson testified that he had not intended to scare L.F. and D.L. Rather, he was "in a fit of rage" because he had lied to his wife about using drugs. 2 RP at 124. Ohlson further stated that he had stopped using drugs since he had been in jail. During Ohlson's cross-examination, the prosecutor asked him whether the incident had been "dominating [his] thoughts while [he was] in custody." 2 RP at 133. Ohlson responded affirmatively and did not object to the prosecutor's questioning.
¶ 10 In addition, in permitting the jury to continue deliberating, the trial court stated:
I'm going to allow you to keep deliberating  but here's the issue we're trying to resolve right now, as I deal with other people and other institutions, the jail. We're trying to make sure that if you reach a verdict, so you don't have to come back tomorrow, we can have the defendant, since you heard in testimony he is in custody, whether or not he can be brought over after 4:30.
2 RP at 210-11 (emphasis added). Ohlson did not object to the court's statements.
¶ 11 The jury found Ohlson guilty of the two counts of second degree assault but not guilty of malicious harassment. He appeals.

I. Admission of D.L.'s Hearsay Statements
¶ 12 Ohlson contends that the trial court erred in admitting D.L.'s out-of-court statements[2] to Officer Gray as excited utterances. He argues that the evidence was insufficient to prove that D.L. perceived, and was under *993 the influence of, a startling event at the time the statements were made. We disagree.
¶ 13 We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. State v. Moran, 119 Wash. App. 197, 218, 81 P.3d 122 (2003), review denied, 151 Wash.2d 1032, 95 P.3d 351 (2004). A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons. Moran, 119 Wash.App. at 218, 81 P.3d 122.
¶ 14 ER 803(a)(2) allows the admission of excited utterances as an exception to the rule excluding hearsay statements. State v. Sunde, 98 Wash.App. 515, 520, 985 P.2d 413 (1999). An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). Three requirements must be met for a statement to qualify as an excited utterance: (1) a startling event or condition must have occurred; (2) the statement must have been made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement must relate to the startling event or condition. State v. Chapin, 118 Wash.2d 681, 686, 826 P.2d 194 (1992).
¶ 15 Ohlson challenges the first and second of these requirements. He argues that the evidence was insufficient to establish that D.L. perceived, or was under the influence of, a startling event or condition because D.L. did not testify as such and Officer Gray presented insufficient evidence of D.L.'s demeanor at the time of the incident. We reject these arguments.
¶ 16 Ohlson is correct in asserting that we must focus on the declarant's perception in analyzing whether a startling event has occurred. See Chapin, 118 Wash.2d at 687, 826 P.2d 194 (for purposes of the excited utterance exception, it is the event's effect on the declarant that must be focused upon). But the declarant need not testify regarding his perception of the event in order to establish this requirement; indeed, a declarant may even recant his statements about the event. See State v. Williamson, 100 Wash. App. 248, 258, 996 P.2d 1097 (2000) (a later recantation does not disqualify a statement as an excited utterance). Rather, we may consider circumstantial evidence in determining whether the declarant has perceived a startling event.
¶ 17 In Williamson, the declarant recanted her statements against the defendant. Williamson, 100 Wash.App. at 252, 996 P.2d 1097. The court nevertheless admitted the statements as excited utterances, considering witnesses' testimony that the declarant was "upset, highly emotional, and in shock" and was "nervous[] and excited" at the time she made the statements. Williamson, 100 Wash.App. at 258-59, 996 P.2d 1097. And in determining that the declarant's statements were made under the influence of the startling event, the court considered witnesses' testimony that the statements were made shortly after the event took place and were a spontaneous recitation of the event. Williamson, 100 Wash.App. at 259, 996 P.2d 1097.
¶ 18 Likewise, the facts of the instant case amply support a finding that a startling event, the assault, occurred and that D.L.'s statements were made under the influence of the assault. L.F. testified that Ohlson began yelling racial epithets at her and D.L. and then drove up onto the sidewalk where she and D.L. were standing. L.F. testified that it was D.L. who said, "look out" before L.F. saw Ohlson's car very close to them. 1 RP at 68. She stated that they had to "jump out of the way" to avoid being hit and that had Ohlson continued driving on the sidewalk, he would have hit the pole D.L. was leaning against. 1 RP at 66.
¶ 19 Officer Gray testified that she spoke with L.F. and D.L. approximately five minutes after the incident occurred and that L.F. and D.L. were "pretty upset" and "shaken up." 1 RP at 91. Additionally, both L.F. and D.L.'s statements were a spontaneous recitation of the facts. The trial court acted within its discretion in concluding that D.L.'s statements were excited utterances.

II. Right of Confrontation
¶ 20 Ohlson next asserts that the admission of D.L.'s out-of-court statements to Officer *994 Gray violated his right of confrontation and Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), because he had no prior opportunity to examine D.L. regarding these statements. The State responds that D.L.'s statements were properly admitted because they were not testimonial and that, even if the statements were admitted in error, the error was harmless.[3]
¶ 21 Ohlson did not raise this issue below. Nevertheless, the right to confront adverse witnesses is an issue of constitutional magnitude,[4] which we may consider for the first time on appeal. RAP 2.5(a); State v. Clark, 139 Wash.2d 152, 156, 985 P.2d 377 (1999).

Testimonial Statements
¶ 22 In Crawford, the United States Supreme Court held that the admission of a witness's testimonial, out-of-court statements violates the confrontation clause when the witness does not testify at trial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness regarding the out-of-court statements. Crawford, 541 U.S. at 68-69, 124 S.Ct. 1354. Here, it is undisputed that D.L. did not testify at trial and that Ohlson had no prior opportunity to cross-examine him.
¶ 23 At issue in this case is whether D.L.'s statements to Officer Gray were "testimonial" as Crawford contemplated. Officer Gray arrived at the scene approximately five minutes after L.F. called 911 and spoke with both L.F. and D.L. regarding the incident. Ohlson was no longer at the scene. Officer Gray testified that L.F. and D.L. told her:
[w]hile they were out there, a vehicle  I'm going to  I have the description. It was an orange Toyota  had gone by and flipped them off and, I quote, "called them f[____]ing niggers" and sped off. The vehicle then came back around and actually swerved up on to the curb trying to hit them. At least that's the way they felt. They had to literally jump out of the way so that they were not hit. This continued, they said, at least four times, where the car went back and forth in front of them, calling them racial names.
1 RP at 92-93.
¶ 24 The Crawford Court declined to comprehensively define "testimonial" statements; however, it identified three examples of the types of statements that could be properly regarded as testimonial statements. These statements include: (1) ex parte in-court testimony or its functional equivalent, i.e., affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that a declarant would reasonably expect to be used prosecutorially; (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and (3) statements made under circumstances that would lead an objective witness reasonably to believe that the statements would be available for use at a later trial. Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354. Additionally, the Court stated that statements given to police in the course of interrogations are testimonial. Crawford v. Wash., 541 U.S. at 52, 124 S.Ct. 1354.
¶ 25 The statements at issue here do not fall within the first category of testimonial statements identified in Crawford. Nor were the statements given in the course of police interrogation. Washington has not yet specifically addressed what type of police questioning might qualify as an "interrogation" for Crawford purposes.
¶ 26 But, the courts of other jurisdictions have held that initial police questioning at the scene of a crime does not constitute classic, police interrogation as contemplated by Crawford. See People v. Corella, 122 Cal.App.4th 461, 18 Cal.Rptr.3d 770, 776 (Cal.Ct. App.2004) (preliminary questions asked at the scene of a crime shortly after it has occurred do not rise to the level of an interrogation); *995 Hammon v. State, 809 N.E.2d 945, 951-52 (Ind.Ct.App.2004) (the term "interrogation" does not apply to preliminary investigatory questions asked at the scene of a crime shortly after it has occurred); Lopez v. State, 888 So.2d 693, 698 (Fla.Dist.Ct.App. 2004) (it is doubtful that initial police questioning at the scene of a crime is an interrogation). Further, there is support for this conclusion in Crawford: the Court used the term "interrogation" in this context to refer to a structured inquiry. See Crawford, 541 U.S. at 53 n. 4, 124 S.Ct. 1354 ("[w]e use the term `interrogation' in its colloquial, rather than any technical legal, sense"; the declarant's "recorded statement, knowingly given in response to structured police questioning, qualifies under any conceivable definition" of that term).
¶ 27 Although D.L.'s statements were made in response to questioning by a police officer, Officer Gray's minimal questioning was not an "interrogation" as Crawford contemplated. Officer Gray testified that she merely "made contact" with L.F. and D.L. and "spoke with both of them" about what had happened. 1 RP at 90-91.
¶ 28 Nor do D.L.'s statements fall with the second category of out-of-court statements made in "formalized testimonial materials." Crawford, 541 U.S. at 52, 124 S.Ct. 1354. Rather, it is the third category of testimonial statements, statements made with the reasonable expectation that they will be used at a later trial, that is of concern in this case.
¶ 29 The State urges us to hold that excited utterances, by definition, cannot be made with a reasonable expectation that they will be used for prosecution. It argues that excited utterances are admissible under the rules of evidence because "`the stress of the event suppresses the reflective faculties of the declarant'"; accordingly, the declarant of an excited utterance is incapable of reflection and unable to form the expectation that his or her statement will be used in a later prosecution. Br. of Resp't at 21 (quoting State v. Palomo, 113 Wash.2d 789, 796, 783 P.2d 575 (1989), cert. denied, 498 U.S. 826, 111 S.Ct. 80, 112 L.Ed.2d 53 (1990)).
¶ 30 Case law from other jurisdictions supports the State's position. See (Anderson v. State, 111 P.3d 350, 354 (Alaska Ct.App. 2005)) (excited utterances by a crime victim to a police officer are not testimonial); United States v. Webb, No. DV-339-04, 2004 WL 2726100 *3 (D.C.Super.Nov.9, 2004) (it is exceedingly unlikely that the Supreme Court intended to exclude from evidence excited utterances made during investigatory questioning at the scene of a crime soon after the criminal event); Fowler v. State, 809 N.E.2d 960, 964 (Ind.Ct.App.2004) (the very nature of the declarant's excited utterance places it outside the realm of testimonial statements).
¶ 31 Our recent decision in State v. Orndorff, 122 Wash.App. 781, 95 P.3d 406 (2004), review denied, 154 Wash.2d 1010, 113 P.3d 482 (2005), supports our decision here to adopt a per se rule that excited utterances are not testimonial. In that case, we held that the victim's statement was not testimonial:
Coble's excited utterance fits into none of [Crawford's] categories. It was not a declaration or affirmation made to establish or prove some fact; it was not prior testimony or a statement given in response to police questioning; and Coble had no reason to expect that her statement would be used prosecutorially. Rather, Coble's statement was a spontaneous declaration made in response to the stressful incident she was experiencing. We hold that Coble's excited utterance was not testimonial and, therefore, not precluded by Crawford's confrontation clause analysis.
Orndorff, 122 Wash.App. at 787, 95 P.3d 406.
¶ 32 Similarly, here, D.L.'s statements did not fit any of the categories set forth in Crawford. It is not reasonable to regard an excited utterance as "bearing witness" such that the declarant would know that it would be used in a later prosecution. And although Orndorff concerned a statement made to a friend, not a policeman, the rationale is the same  excited utterances are not testimonial by their very nature.
¶ 33 Our Supreme Court has addressed 911 calls, and established that they must be examined on a case-by-case basis. State v. Davis, 154 Wash.2d 291, 302-303, 111 P.3d 844, cert. granted, ___ U.S. ___, 126 S.Ct. *996 547 (2005). Our decision is consistent with those cases examining 911 calls.
¶ 34 In Davis, the court noted that in most 911 calls the caller is not "bearing witness," and an examination must be made to determine whether the caller is knowingly providing the equivalent of testimony to a government agent. Davis, 154 Wash.2d at 301, 111 P.3d 844. But Davis also quoted from a California case, Corella, 122 Cal.App.4th 461, 18 Cal.Rptr.3d 770:
The Corella court further stated that it is difficult to perceive any circumstances under which a statement qualifying as an excited utterance would be testimonial. The rationale behind the excited utterance exception to the hearsay rule is that the statement is "made without reflection or deliberation due to the stress of excitement." "[S]tatements made without reflection or deliberation are not made in contemplation of their `testimonial' use in a future trial."
Davis, 154 Wash.2d at 302, 111 P.3d 844 (quoting Corella, 18 Cal.Rptr.3d at 776) (citations omitted).
¶ 35 In State v. Walker, 129 Wash.App. 258, 269, 118 P.3d 935 (2005), Division One of this court declined to adopt a per se rule that all excited utterances cannot be testimonial. We do not agree.
¶ 36 We analyze whether excited utterances are testimonial in the same manner that we analyze whether statements are truly excited utterances. Thus, we employ the restrictive reasoning and definition of "excited utterance" as set forth in State v. Brown, 127 Wash.2d 749, 758, 903 P.2d 459 (1995):
The excited utterance exception is based on the idea that:
"under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control." The utterance of a person in such a state is believed to be "a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock," rather than an expression based on reflection or self-interest.
Brown, 127 Wash.2d at 758, 903 P.2d 459 (quoting Chapin, 118 Wash.2d at 686, 826 P.2d 194 (quoting 6 JOHN HENRY WIGMORE, EVIDENCE § 1747, at 195 (Chadbourn rev. 1976))).
As a result, the "key determination is `whether the statement was made while the declarant was still under the influence of the event to the extent that [the] statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.'" State v. Strauss, 119 Wash.2d 401, 416, 832 P.2d 78 (1992) (quoting Johnston v. Ohls, 76 Wash.2d 398, 406, 457 P.2d 194 (1969)).
Brown, 127 Wash.2d at 758-59, 903 P.2d 459. Because of this restrictive definition, excited utterances should not be considered as statements that "bear witness." Using this analysis, along with our review of the trial court's conclusion that D.L.'s statements were an excited utterance, we adopt a per se rule and hold that excited utterances cannot be testimonial under Crawford.
¶ 37 Under our scheme, the trial court will decide whether the statement is an excited utterance. Then, we would review that decision based upon the restrictive definition above, as we have done in this case and as our Supreme Court did in Brown. If our review concludes that the statement was an excited utterance, then it would be admissible as non-testimonial.
¶ 38 Accordingly, we do not need to perform a fact-specific analysis in determining whether an excited utterance made to a police officer constituted "testimony" for Crawford purposes. The court did not err.
¶ 39 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
I concur: QUINN-BRINTNALL, C.J.
HUNT, J.
¶ 56 I agree with the majority's result in this case and almost all of the rationale. But I write separately to express my disagreement with their adoption of a blanket rule *997 that every excited utterance is non-testimonial and, therefore, does not run afoul of constitutional confrontation rights as recently enunciated by the United States Supreme Court in Crawford v. Washington.[7] Instead, I would follow Division One's opinion in State v. Walker, 129 Wash.App. 258, 269, 118 P.3d 935 (2005), and "decline to adopt a per se rule ... that all excited utterances cannot be testimonial." (Emphasis added.)
¶ 57 Although the blanket rule adopted by the majority here works under the facts of this case, I can conceive of a hybrid situation where a predominantly excited utterance might contain testimonial elements that run afoul of Crawford. I think it prudent for now, while the post-Crawford case law is newly evolving, to decide this issue on a case-by-case basis. In my view, such an approach should not involve significant additional judicial resources because the trial courts will already be deciding whether a statement offered as an excited utterance is testimonial, such that the statement will not be admissible unless the declarant is, or has been, subject to cross examination. Crawford, 124 S.Ct. 1354.
NOTES
[1] Crawford v. Wash., 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
[2] These statements include testimony by Officer Gray that both L.F. and D.F. told her that Ohlson had driven past them several times, yelling racial epithets. Ohlson then swerved up on to the curb, causing them to jump out of the way to avoid being struck. Officer Gray further testified that L.F. and D.L. told her that they believed that Ohlson had tried to hit them with his vehicle.
[3] Because of our holding that excited utterances are not testimonial, we do not address harmless error even though we hold that there was not only sufficient, but overwhelming evidence supporting the convictions.
[4] The sixth amendment to the United States Constitution and article I, section 22, of the Washington State Constitution, guarantee criminal defendants the right to confront and cross-examine witnesses against them.
[7] 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed. 2d 177 (2004).