Filed 7/31/13  In re Alex S. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ALEX S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>ALEX S.,<br><br>        Defendant and Appellant. | F065679<br><br>(Super. Ct. No. 09CEJ601113-4)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County. Rosendo Peña, Jr., Judge.

Kelly Lynn Babineau, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Gomes, J., and Poochigian, J.

Following a jurisdiction hearing, the juvenile court found true allegations that appellant, Alex S., a minor, committed second degree robbery (Pen. Code,[1] §§ 211, 212.5, subd. (c)), and that in committing that offense he personally used a deadly or dangerous weapon (§ 12022, subd. (b)(1)). Following the subsequent disposition hearing, the juvenile court readjudged appellant a ward of the court,[2] ordered him committed to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities, and declared his maximum term of physical confinement to be nine years eight months, less 245 days credit for time served.

On appeal, appellant contends (1) the evidence was insufficient to support the instant adjudication, and (2) the court violated appellant's Sixth Amendment right to confront witnesses against him by admitting, at the jurisdiction hearing, the victim's hearsay statements to a police officer. We affirm.

**FACTS**

*The Robbery and its Aftermath*

On the morning of April 30, 2012 (April 30), the following persons were traveling on a bus in Fresno: Fifteen-year-old B.R., who was on her way to school; her female cousin, S.G.; a boy (victim) who was listening with headphones to an iPad; a boy known to B.R. as Mervin; and another boy who appeared to be a friend of Mervin's. At approximately 7:30 a.m., the bus stopped near the corner of Cedar and Clinton, and these

---

[1]     Except as otherwise indicated, all statutory references are to the Penal Code.

[2]     Appellant was initially adjudged a ward of the court in 2009, based on his adjudication of bringing or possessing a weapon on school grounds (§ 626.10, subd. (a)). He was readjudged a ward the first time in 2010, for violating curfew and obey-all-law conditions of probation; a second time later in 2010, for committing a violation of section 288, subdivision (a) (committing a lewd or lascivious act against a child under the age of 14), and a third time in 2012, for committing a violation of section 21310 (carrying a concealed dirk or dagger).

2

five persons got off the bus. As the victim was walking near the bus stop, Mervin and his friend approached the victim, and Mervin's friend pulled out a knife and told the victim to "give it up" or else he (Mervin's friend) would stab him. The victim was shaking. He asked "'Why?'" and Mervin's friend said "'Just give it up, fool, or I'm gonna stab you.'" The victim proffered the iPad, Mervin's companion told Mervin to "get it," Mervin did so, and Mervin and his companion ran off. A friend of B.R.'s handed the victim a telephone and he called the police.

At approximately 7:30 a.m. on April 30, Fresno Police Officer Epifanio Cardenas received a dispatch call that an armed robbery had just occurred in the area of Cedar and Clinton, and "within a minute or less," he arrived on the scene. He made contact with the victim, who was "pretty terrified" and "almost in tears." The victim "gave [the officer] information on what had happened." He "gave [the officer] descriptions of two Hispanic males, one shorter than the other, with the shorter subject having a knife and threatening him with it." He stated the person with the knife was wearing a black T-shirt and shorts, and the other person was wearing a black hoodie and "some jeans or a pair of pants."[3]

Cardenas also spoke with B.R. and S.G., who told him the two robbers attended a "probation school," which Cardenas soon learned from Officer Rudy Ruiz was Violet Heintz Education Academy (Heintz Academy). B.R. told the officer Mervin's name and gave him a description of both robbers. Later that day, Ruiz drove to the Heintz Academy, made contact with the school probation officer, and gave her the name of one of the suspects—"Mervin [A.]"—and a description of the other. Thereafter, Ruiz

---

**3** As discussed in more detail infra, the court admitted Cardenas's testimony of the descriptions provided by the victim over objection by defense counsel.

informed Cardenas that the "probation officer ... said they had a subject matching that description."[4]

Cardenas went to the victim's school, picked him up, drove him to the Heintz Academy, and parked outside the school. Ruiz brought appellant outside. When the victim saw appellant, he (the victim) began to cower in the back seat of the police car.[5]

### Identification Evidence - B.R.'s Testimony

Asked if she remembered what the person with the knife looked like on April 30, B.R. testified he was "[l]ightweight kind of," his hair was "spiky," and he was wearing a "black shirt" and shorts. She did not remember if he had any facial hair.

B.R. identified a photograph of appellant taken on the day after the robbery as being that of the armed robber. She was able to recognize the person depicted as being the armed robber based on "his hair and his shirt and his pants and his shorts." The person in the photograph had spiky hair and was wearing shorts. B.R. also indicated "there was nothing about [the] ... face [of the person shown in the photograph] that made [her] believe that this was [the armed robber]." She did not remember if the armed robber was wearing a scarf and a cross and had facial hair, but the photograph showed all of these things. She was "familiar" with the face of the armed robber; she "had seen [him] before."

When asked if the armed robber was in the courtroom, she answered, "I don't know."

---

**4** This evidence was admitted "in so far as it describes the investigation," and not for the truth of the matter asserted, i.e., that there was a person at the school who matched the description the officer had received.

**5** The information set forth in the foregoing factual summary is undisputed. The only disputed factual issue at the jurisdiction hearing was the identity of the knife-wielding robber. We refer to this person as the armed robber.

*Identification Evidence - S.G.'s Testimony*

S.G. identified appellant in court as the armed robber. She was able to recognize him because she "remember[ed] his face." Prior to testifying, S.G. spoke with an investigator with the prosecutor's office who told her appellant would be in court and would be sitting next to his attorney.

She did not remember what the armed robber was wearing on April 30, and on that day, she did not give Cardenas a description of what the armed robber was wearing. Prior to the jurisdiction hearing, she had never been asked if she could identify any persons depicted as persons who had been "involved in this case."

**DISCUSSION**

*Sufficiency of the Evidence*

Although there is no dispute the evidence was sufficient to support the conclusion that a robbery was committed by two persons and that one of them personally used a knife in doing so, appellant contends the evidence was insufficient to establish that he was one of the robbers. We disagree.

<u>Legal Background</u>

In determining whether the evidence is sufficient to support a finding in a juvenile court proceeding, the reviewing court is bound by the same principles as to the sufficiency and substantiality of the evidence which govern the review of criminal convictions generally. (*In re Roderick P.* (1972) 7 Cal.3d 801, 809.) Those principles include the following: "In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could

5

reasonably deduce from the evidence....  "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'"'"  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

We resolve neither credibility issues nor evidentiary conflicts.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).)  "Reversal on this ground [i.e., insufficiency of the evidence] is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the adjudication].'"  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  "Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding."  (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052 (*Barnwell*).)

"The [reviewing] court does not, however, limit its review to the evidence favorable to the respondent....  '[We] may not limit our appraisal to isolated bits of evidence selected by the respondent.'"  (*People v. Johnson* (1980) 26 Cal.3d 557, 577 (*Johnson*).)  Moreover, "'it is not enough for the respondent simply to point to "some" evidence supporting the finding, for "Not every surface conflict of evidence remains substantial in the light of other facts."'"  (*Ibid*.)

## Analysis

Appellant's sufficiency-of-the-evidence challenge fails.  Under the principles summarized above, S.G.'s in-court identification of appellant as the armed robber is, by itself, sufficient to support the instant adjudication and weapon-use enhancement.  (See *Barnwell*, *supra*, 41 Cal.4th at p. 1052 [testimony of single witness may be sufficient to support conviction].)  In addition, B.R.'s testimony in which she identified a photograph of appellant as being that of the armed robber further supports the true findings on both the substantive offense and the enhancement.

6

Appellant, invoking the principle that "'"[n]ot every surface conflict of evidence remains substantial in the light of other facts"'" (*Johnson, supra*, 26 Cal.3d at p. 577) and asserting that "[e]ye witness identification evidence ... carries with it a false aura of reliability," argues that S.G.'s testimony was "not believable, not substantial and not supported by other evidence," and was therefore insufficient to support the judgment. In support of this claim, appellant asserts the following: S.G. was an impressionable 15-year-old whose testimony was "clearly tainted" because the prosecutor's investigator told her before the jurisdiction hearing that appellant would be in court, and S.G. "was unable to provide any type of identification of the suspect or his clothing right after the incident, when a person's memory and ability to recall would be best." Appellant attacks B.R.'s testimony on similar grounds. For example, he argues that B.R.'s photograph identification was not worthy of belief because she was not able to identify appellant as the armed robber when he was sitting in the courtroom.

These factors, however, do no more than suggest conflicts in the evidence, and, as indicated above, we resolve such conflicts in favor of the judgment. (*Zamudio, supra*, 43 Cal.4th at p. 357.) Substantial evidence supports the juvenile court's findings on both the instant offense and the weapon-use enhancement. Therefore, we may not disturb those findings.

### Sixth Amendment Right to Confrontation

As indicated earlier, appellant argues that the admission of Cardenas's testimony as to the description of the robbers provided by the victim shortly after the robbery violated his rights under the confrontation clause of the Sixth Amendment to the United States Constitution. We disagree.

#### Procedural Background

Cardenas testified he arrived on the scene "within a minute or less" of receiving the dispatch call and encountered the victim, who was "pretty terrified" and "almost in

7

tears." The victim "gave [the officer] information on what had happened and also four witnesses who had seen the incident." When asked if "the victim [gave] a description of the suspects," the officer answered, "Yes." To the next question—"what did he say about the two suspects[?]—defense counsel objected on the following grounds: "Hearsay, Crawford v. Washington[6] and Sixth Amendment."

At that point, the prosecutor, citing Cardenas's testimony that the victim was terrified, argued "that this is not testimonial ... in that it is an excited utterance and it was very close to time of the crime." The court asked defense counsel, "did you wish to respond to the excited utterance?" Defense counsel first responded, "Yes, Your Honor, that could give exception to the hearsay rule." Counsel then went on to argue admission of the challenged testimony would be a "violation of [appellant's] Sixth Amendment and Crawford v. Washington rights." At that point, the court overruled the objection, and Cardenas testified as to the description provided by the victim.

*Legal Background*

"The Sixth Amendment of the federal Constitution provides that a defendant has the right to confront the witnesses against him. In *Crawford*, the United States Supreme Court held that admission of a 'testimonial' hearsay statement by a declarant who does not appear for cross-examination at trial violates the confrontation clause unless the witness is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the witness. [Citation.] This rule applies even if the statement is otherwise admissible under a hearsay exception. [Citation.] However, the confrontation clause does not bar admission of hearsay statements that are not testimonial. [Citation.] (*People v. Nelson* (2010) 190 Cal.App.4th 1453, 1463.)

---

**6**     See *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*).

Subsequently, in *Davis v. Washington* (2006) 547 U.S. 813 (*Davis*), the United States Supreme Court explained the distinction between the two relevant categories of hearsay evidence—testimonial and nontestimonial—as follows: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (*Id.* at p. 822.) "It is the 'primary purpose of creating an out-of-court substitute for trial testimony' that implicates the confrontation clause." (*People v. Blacksher* (2011) 52 Cal.4th 769, 813 (*Blacksher*).)

*Analysis*

As indicated above, and as appellant does not dispute, it appears the court overruled appellant's hearsay objection and ruled the challenged evidence was not made inadmissible under the hearsay rule because it qualified under what is commonly called the spontaneous statement exception to the hearsay rule (Evid. Code, § 1240). The People argue that (1) the challenged hearsay evidence qualified as a spontaneous statement, and (2) therefore it was nontestimonial. We agree. We address the two parts to this contention in order.

A hearsay statement is within the spontaneous statement exception to the hearsay rule if (1) it "[p]urports to narrate, describe, or explain an act, condition, or event perceived by the declarant," and (2) "[w]as made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240; *People v. Farmer* (1989) 47 Cal.3d 888, 901 (*Farmer*), disapproved on another ground in *People v. Waidla* (2000) 22 Cal.4th 690, 724, fn. 6.) The word "spontaneous," as used in

9

Evidence Code section 1240, "describe[s] actions undertaken without deliberation or reflection." (*Farmer*, *supra*, 47 Cal.3d at p. 903.)

"The crucial element in determining whether a declaration is sufficiently reliable to be admissible under [Evidence Code section 1240] is ... not the nature of the statement but the mental state of the speaker. The nature of the utterance—how long it was made after the startling incident and whether the speaker blurted it out, for example—may be important, but solely as an indicator of the mental state of the declarant. The fact that a statement is made in response to questioning is one factor suggesting the answer may be the product of deliberation, but it does not ipso facto deprive the statement of spontaneity." (*Farmer*, *supra*, 47 Cal.3d at. at pp. 903-904.) Whether a hearsay statement qualifies under the spontaneous utterance exception is a question of fact. (*People v. Poggi* (1988) 45 Cal.3d 306, 318.) The trial court must consider the statement on its own merits and is vested with reasonable discretion in the matter. (*People v. Morrison* (2004) 34 Cal.4th 698, 719.)

The hearsay statements at issue here—the description of the robbers that the victim provided to Cardenas—meet both requirements of a spontaneous statement. First, the statements describe "an act, condition, or event perceived by the declarant" (Evid. Code, § 1240), viz., what the robbers looked like and what they were wearing. Second, it was "spontaneous" within the meaning of Evidence Code section 1240. It was well within the court's discretion to conclude that the victim made the challenged statements within minutes of the robbery, at a time when he was terrified, near tears, and in a state of extreme agitation, without deliberation or reflection.

Such statements are nontestimonial. As the court stated in *People v. Corella* (2004) 122 Cal.App.4th 461, 469: "[I]t is difficult to identify any circumstances under which a section 1240 spontaneous statement would be 'testimonial.' The rationale of the spontaneous statement exception to the hearsay rule is that the utterance must be made

10

without reflection or deliberation due to the stress of excitement. [Citation.] [S]tatements made without reflection or deliberation are not made in contemplation of their 'testimonial' use in a future trial." (*Id*. at p. 469, fn. omitted.)

Other considerations support our conclusion. When determining the primary purpose of an interrogation, a court "must *objectively* evaluate the circumstances of the encounter along with the statements and actions of the parties." (*Blacksher*, *supra*, 52 Cal.4th at p. 813, italics added.) The inquiry is on the "*primary* purpose of both officer and declarant" at the time the statement was made. (*Id*. at p. 814.) "An officer, even when responding to an emergency, remains an investigator and, thus, is not indifferent to the gathering of evidence." (*Ibid*.) Considerations relevant to the inquiry include the "disarming or capture of a perpetrator," as "[e]ven when a threat to an initial victim is over, a threat to first responders and the public may still exist." (*Id*. at pp. 814, 815.) Another relevant consideration is the "informality of the statement and the circumstances of its acquisition." (*Id*. at p. 815.) "Inquiries that are conducted in a disorganized way and in turbulent circumstances are distinguishable from a jailhouse interview ... or the sequestered and formal preparation of an affidavit ...." (*Ibid*.)

In the instant case, the circumstances present at the time the victim made his statements objectively indicated that the primary purpose of Cardenas's interaction with the victim was to deal with an ongoing emergency, not to create an out-of-court substitute for trial testimony. First, Cardenas arrived on the scene within minutes of the robbery and the victim told him "what had happened." Given that an armed robbery had occurred minutes before and the perpetrators were at large, the primary purpose of reasonable parties in Cardenas's position and the victim's position would have been to deal with an ongoing emergency—namely, locating the perpetrators in order to protect other potential victims.

11

Another important circumstance was the informality of the officer's encounter with the victim. It took place out in the open, on a city street on a week-day morning when high school students on their way to school were present. The informal nature of the circumstances surrounding Cardenas's discussion with the victim suggested that reasonable parties would not have intended to create an out-of-court substitute for trial testimony.

Appellant likens the instant case to *Davis*, *supra*, 547 U.S. 813, which involved two consolidated cases. The one upon which appellant relies arose from the police response to a domestic disturbance call. Officers found the victim alone on the front porch. Although she appeared somewhat frightened, she told them that everything was fine. The defendant was present and told the police that he and his wife had had an argument but that everything was fine now. The officers separated the defendant from the victim while one officer questioned the victim. They insisted that the defendant remain in a separate room "'so that [they could] investigate what had happened.'" (*Id*. at p. 820.) After hearing the victim's account, the officers had her sign a "'battery affidavit'" (*ibid*.), which was later admitted at her attacker's trial, in which she described the battery. The *Davis* court held the victim's statements in the affidavit were testimonial because they were made after an ongoing emergency had ended and their primary purpose was to establish or prove past events potentially relevant to a later criminal prosecution. (*Id*. at pp. 822, 829.)

*Davis* is readily distinguishable, for at least two reasons. First, the suspect in *Davis* was present at the scene of the altercation and, for all practical purposes, in the custody of the officers. Under these circumstances, there was no ongoing emergency because he did not pose an immediate threat to the public, unlike the knife-wielding robber and his accomplice in the instant case, who had just successfully committed a robbery and were at large. Second, the victim's signed statement and the separation of

12

the suspect and the victim in *Davis* evince a much greater degree of formality in the police-declarant interaction than was present in the instant case.

On this record, we conclude that the circumstances objectively indicated that the primary purpose of the officer's interaction with the victim was to deal with an ongoing emergency and not to produce an out-of-court substitute for trial testimony, and that therefore the victim's statements were nontestimonial. Thus, the admission of those statements did not violate appellant's Sixth Amendment right to confront witnesses against him.

## DISPOSITION

The judgment is affirmed.