Filed 9/30/20  P. v. Uruk CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CEVDET URUK,<br><br>    Defendant and Appellant. | 2d Crim. No. B299732<br>(Super. Ct. No. 18CR02248)<br>(Santa Barbara County) |

A jury convicted Cevdet Uruk of corporal injury to a spouse (Penal Code,[1] § 273.5, subd. (a)), dissuading a witness (§ 136.1, subd. (b)(1)), assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)), contempt of court (§ 166, subd. (c)(1)), battery (§ 243, subd. (e)(1)), and false imprisonment (§ 236).  The trial court found true an allegation that Uruk had suffered a prior domestic violence conviction (§ 273.5, subd. (f)(1)), and sentenced him to 10 years eight months in state

---

[1] Undesignated statutory references are to the Penal Code.

prison.  Uruk contends:  (1) the judgment should be reversed because the court erroneously excluded impeachment evidence, (2) the sentence on his corporal injury to a spouse conviction should be reduced, and (3) the sentences on his battery and false imprisonment convictions should be stayed.[2]  We reduce Uruk's sentence by one year, and otherwise affirm.

FACTUAL AND PROCEDURAL HISTORY

On the evening of March 8, 2018, Uruk choked his wife during an argument.  He then pinned her against the kitchen counter.  She did not call 911 because she thought the incident would "blow over" and Uruk would forget about it.

The next morning, Uruk was still angry about the events of the previous evening.  He grabbed his wife by both arms and pinned her against the wall.  She struggled to get away.  He struck her in the face twice, causing her to fall to the floor.

While his wife was on the floor, Uruk went to the bedroom and took her phone.  He refused her request to return it.  A sheriff's deputy later found the phone on top of the refrigerator.

Uruk's wife called 911 from a neighbor's house.  She told the operator that Uruk had just hit her, and that he tried to choke her the previous evening.  She said that he had "lost control completely" and threatened to kill her.

A sheriff's deputy responded to the 911 call and saw that Uruk's wife had a bruised and lacerated lip.  She told the deputy that Uruk had grabbed her by the arms, pinned her

---

[2] In a supplemental brief, Uruk raises several additional arguments in support of his contention that the judgment should be reversed.  Because he does not support these arguments with citations to the record or legal authority, we do not consider them.  (*In re Champion* (2014) 58 Cal.4th 965, 985-986.)

against the wall, and struck her in the face. When the deputy spoke with Uruk, he did not observe any injuries. Uruk did not complain of any injury, and did not claim that his wife had attacked him.

Uruk was arrested. He later posted bail and returned home to his wife and children, where he remained throughout trial.

Prosecutors called Uruk's wife as a trial witness. After she was sworn in, she refused to answer prosecutors' questions except to say that no one had told her not to testify. The trial court then gave Uruk the opportunity to question his wife, but he declined. The court thereafter admitted into evidence a recording of her 911 call, and permitted the sheriff's deputy who interviewed her to testify.

Uruk sought to impeach this evidence with a July 2018 letter his wife purportedly wrote to the district attorney and a May 2019 e-mail she purportedly wrote to his attorney to pass along to the district attorney. In the letter, Uruk's wife "apologized . . . for the troubles [she] might have caused." She said she "acted childishly without knowing/understanding the consequences of [her] actions." She did not "remember [the March 2018] events clearly," but believed she "used inappropriate words and made misleading/false/exaggerated statements" when describing them. She said that there was no violence in her home, that her outbursts were due to fatigue, and that she had been the aggressor. She asked the district attorney to drop the charges against her husband.

In the e-mail, Uruk's wife reiterated that she had "trouble recalling [the] exact events" of March 2018, and "still [didn't] understand how things work[ed]." She again claimed

that she overreacted, that there was no violence or threat of violence in her home, and that she "might" have been the aggressor.

The trial court denied Uruk's request to admit the impeachment evidence. The letter was deemed unreliable and unduly prejudicial pursuant to Evidence Code section 352. The e-mail was "even less relevant [and] less reliable than the letter" because it was submitted for "litigation purposes" in lieu of actual testimony. It was also unduly prejudicial.

After the jury convicted Uruk of the charges against him, the trial court found true an allegation that he suffered a prior domestic violence conviction for committing battery on a spouse. The court rejected a recommendation for probation, concluding that Uruk instead deserved a "full-term consecutive" sentence, "the maximum sentence . . . allowable by law." It sentenced him to 10 years eight months in state prison: five years on the corporal injury to a spouse conviction; two years for dissuading a witness; one year each on the assault, contempt, and battery convictions; and eight months on the false imprisonment.

## DISCUSSION

### *Exclusion of impeachment evidence*

Uruk contends the trial court prejudicially erred when it admitted the recording of his wife's 911 call and her subsequent statements to the sheriff's deputy but excluded the letter and e-mail. We disagree.

Evidence Code section 1202 permits the admission of "[e]vidence of a statement . . . by a declarant that is inconsistent with a statement by such declarant . . . for the purpose of attacking the [declarant's] credibility." This provision "creates 'a

4

uniform rule permitting a hearsay declarant to be impeached by inconsistent statements in all cases, whether or not the declarant has been given an opportunity to explain or deny the inconsistency.' [Citation.]" (*People v. Corella* (2004) 122 Cal.App.4th 461, 470 (*Corella*).) Its purpose is to "assure fairness to the party against whom hearsay evidence is admitted without an opportunity for cross-examination." (*Ibid.*)

But the impeachment evidence Uruk proffered at trial—the letter and e-mail from his wife—were in writing. And "[a]uthentication of a writing is required before it may be received in evidence." (Evid. Code, § 1401, subd. (a).) Uruk had the opportunity to question his wife about the authenticity of the letter and e-mail at trial, but did not do so. Nor did he present any other evidence of the authenticity of the two writings. The trial court thus did not err when it declined to receive them into evidence. (Evid. Code, § 403, subd. (a)(3) [proponent of writing has burden of showing its the authenticity]; see *People v. Brown* (2004) 33 Cal.4th 892, 901 [when deciding challenge to admission or exclusion of evidence, appellate court examines result, not trial court's rationale].)

We would not find error even if Uruk had authenticated the letter and email. A trial court has broad discretion to exclude impeachment evidence if its probative value "is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice." (Evid. Code, § 352; see *People v. Hamilton* (2009) 45 Cal.4th 863, 929.) When analyzing whether to exclude evidence as unduly prejudicial, a court "need not expressly weigh prejudice against probative value, or even expressly state it has done so." (*People v. Williams* (1997) 16 Cal.4th 153, 214.) "All that is required is

that the record demonstrate the . . . court understood and fulfilled its responsibilities under Evidence Code section 352." (*Ibid*.)

The record demonstrates that happened here. The letter and e-mail were only marginally probative. In both writings Uruk's wife said that she did not remember all of the details of the March 2018 events. She also never explicitly contradicted her statements—made in both the 911 call and the subsequent statements to the sheriff's deputy—that Uruk had hit her in the mouth.

Admission of the writings would have presented a potential for prejudice. Uruk was living at home with his wife throughout trial, which permitted him to pressure her to recant the statements she had made to the 911 operator and sheriff's deputy. Uruk had also previously battered his wife, which undermined her statements that there has been no violence in their household. Balancing this potential prejudice against the marginal probative value of the writings, we cannot say "'that the court exercised its discretion in an arbitrary, capricious[,] or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

This case is unlike *Corella*, *supra*, 122 Cal.App.4th 461, on which Uruk relies. In that case, "[t]he record show[ed] that the trial court did not exclude the [impeachment] evidence under [Evidence Code] section 352" but rather "because it had been stricken from the preliminary hearing." (*Id*. at p. 471.) We thus had no occasion to consider whether the evidence was unduly prejudicial. "It is axiomatic that cases are not authority

for propositions not considered." (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10.)

*Corporal injury to a spouse sentence*

Uruk next contends, and the Attorney General concedes, the sentence on his corporal injury to a spouse conviction must be reduced to four years because the trial court relied on an inapplicable alternative penalty scheme. We agree.

When a person is convicted of corporal injury to a spouse, and has, within the previous seven years, been convicted of a violation of section 243, subdivision (d), the person can be sentenced to two, four, or five years in state prison. (§ 273.5, subd. (f)(1).) If the person's prior conviction was for a violation of section 243, subdivision (e), however, the person can be sentenced to two, three, or four years in prison. (§ 273.5, subd. (f)(2).) Here, the trial court sentenced Uruk to five years in prison for his corporal injury on a spouse conviction pursuant to section 273.5, subdivision (f)(1). But it should have sentenced him pursuant to subdivision (f)(2) of that section because his prior conviction was for a violation of section 243, subdivision (e). Accordingly, the sentence on Uruk's corporal injury on a spouse conviction must be reduced to four years.

*Battery and false imprisonment sentences*

Lastly, Uruk contends the sentences on his battery and false imprisonment convictions should be stayed pursuant to section 654 because they occurred during a course of conduct indivisible from his corporal injury to a spouse conviction. We disagree.

"An act . . . that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but

7

in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)  This prevents a defendant from being punished for multiple offenses that are committed during "a course of conduct deemed to be indivisible in time."  (*People v. Beamon* (1973) 8 Cal.3d 625, 639.)  """"Whether a course of criminal conduct is divisible[,] and therefore gives rise to more than one act within the meaning of section 654[,] depends on the intent and objective of the actor.""""  (*People v. Jackson* (2016) 1 Cal.5th 269, 354 (*Jackson*).)  If all of the offenses were "merely incidental to" a single objective, or were all "the means of accomplishing or facilitating" that objective, the defendant "may be found to have harbored a single intent and . . . may be punished only once."  (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)  But if the defendant "harbored 'multiple criminal objectives[]' [that] were independent of and not merely incidental to each other, [they] may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.'  [Citation.]"  (*Ibid*.)

"Intent and objective are factual questions for the trial court, which must find evidence to support the existence of a separate intent and objective for each sentenced offense." (*Jackson, supra*, 1 Cal.5th at p. 354.)  We will uphold the court's determination that Uruk had separate intents and objectives when committing corporal injury to his wife, battery, and false imprisonment if supported by substantial evidence.  (*People v. Osband* (1996) 13 Cal.4th 622, 730.)  In applying this standard, we accept all rational inferences the court may have drawn from the evidence, irrespective of whether we would have drawn those

same inferences ourselves.  (*People v. Solomon* (2010) 49 Cal.4th 792, 811-812.)

The three offenses at issue all occurred on the morning of March 9, 2018.  Uruk battered his wife by grabbing her arms.  He falsely imprisoned her when he pinned her against the wall.  And he inflicted corporal injury when he punched her in the mouth and caused her to fall to the floor.

Substantial evidence supports the trial court's determination that Uruk harbored separate intents and objectives when he committed each of these offenses.  It is rational to infer that he battered his wife because he was still angry about the events of March 8.  It is rational to infer that he falsely imprisoned her to prevent her from fleeing or resisting his abuse.  And it is rational to infer that he inflicted corporal injury on her to neutralize her so he could go into the bedroom, take her phone, and prevent her from calling the police.  It was thus permissible to punish each offense separately.  (See, e.g., *People v. Nubla* (1999) 74 Cal.App.4th 719, 730-731 [multiple punishment permitted for separate acts of domestic violence].)

Multiple punishments are not barred where, as here, "the defendant had a chance to reflect between offenses and each offense created a new risk of harm."  (*People v. Felix* (2001) 92 Cal.App.4th 905, 915.)  "[T]he purpose of section 654 is to ensure that the defendant's punishment is commensurate with [their] culpability."  (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1256.)  Permitting multiple punishments for an increasingly egregious course of conduct—like Uruk's on the morning of March 9—is accordingly proper.  (*Ibid.*)

9

## DISPOSITION

Uruk's sentence is vacated, and the matter is remanded to the trial court with directions to resentence him to total term of nine years eight months in state prison, a term that includes four years on the corporal injury on a spouse conviction. (See § 273.5, subd. (f)(2).)  The clerk of the court shall prepare an amended abstract of judgment, and forward a copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


TANGEMAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

10

Michael J. Carrozzo, Judge

Superior Court County of Santa Barbara

_____

Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.