Filed 12/6/22 P. v. Cimolino CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. TANYA MARIE CIMOLINO, Defendant and Appellant. | F080394 (Super. Ct. No. CRF56954) **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tuolumne County. James A. Boscoe, Judge.

Erin J. Radekin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Cavan M. Cox II, and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Detjen, Acting P. J., Smith, J. and Snauffer, J.

# INTRODUCTION

On June 28, 2019, a jury convicted defendant of attempted first degree burglary (Pen. Code, §§ 459, 664, count I)[1] and found true the special allegation a nonparticipant was present during the burglary (§ 667.5, subd. (c)(21)); driving under the influence of alcohol (DUI) (Veh. Code, § 23152, subd. (a), count II) and found true the special allegation defendant drove with a blood-alcohol content (BAC) of 0.15 percent or higher (Veh. Code, § 23578); and driving while having a BAC of 0.08 percent or higher (Veh. Code, § 23152, subd. (b), count III). Subsequently, the trial court suspended imposition of defendant's sentence and ordered probation for five years.

On appeal, defendant contends the trial court prejudicially erred and violated both her state and federal constitutional rights to due process and confrontation by refusing to allow defense counsel to question Tuolumne County Sheriff's Deputy B. Lee regarding his prior statement in the CAD log that "no crime occurred at the residence." Defendant further contends the trial court erred in imposing identical fines and fees for both counts II and III, which were based on the single act of driving while intoxicated. The People concede error. Lastly, this court ordered supplemental briefing to address the issue of whether the jury could find true the nonparticipant present allegation as to count I. Defendant contends the jury improperly found true the nonparticipant present allegation because she was convicted of attempted first degree burglary, which is not included among the offenses supporting a finding under section 667.5, subdivision (c)(21). The People concede error.

We conclude the trial court did not abuse its discretion in excluding Deputy Lee's CAD log statement because it constitutes inadmissible hearsay. Further, we accept the People's concession and stay the fines and fees imposed for count III, pursuant to section 654. We also accept the People's concession and vacate the jury's true finding as

---

[1] Subsequent statutory references are to the Penal Code, unless otherwise indicated.

to the nonparticipant present allegation as to count I because section 667.5 does not apply to attempted violent felonies.

## STATEMENT OF FACTS

### I.  The Offense

On May 13, 2018, defendant attended a rodeo with her boyfriend, Trent G.,[2] her son, K.C., and a friend.  Defendant's daughter, L.C., did not go because she was not feeling well.  Trent agreed to be the sober driver to allow defendant to drink alcohol at the rodeo.  At the rodeo, defendant "drank quite a bit" and was drunk.  Around 3:30 p.m., the group left the rodeo and picked up L.C. before heading home.  Defendant and Trent began to argue in the car and the arguing continued at home.  At home, defendant testified she drank another "beer or two."

After arriving home, while defendant and Trent continued to argue in the front yard, K.C. and L.C. went into the house.  Subsequently, Trent got into his truck and started to leave when defendant stood in front of the truck and attempted to open the car's door to try and keep him from leaving.  Defendant then fell to the ground and cut her hand on the gravel.

During this argument, L.C. called her father, Michael C., to pick the children up. L.C. told Michael she was frightened and upset because defendant and Trent were fighting and yelling, and she believed defendant was intoxicated.  Michael called his girlfriend Angela to pick up the children because he was an hour and a half away from the house.  Angela agreed to pick the children up at a nearby church.  L.C. and K.C. then grabbed their backpacks, left defendant's house without telling defendant, and started walking over to the church.  Subsequently, Trent pulled up in his truck, picked up the children, and drove them to the church.  Angela picked up K.C. and L.C., who both cried

---

**2**    Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names or initials only.  No disrespect is intended.

3.

during the drive. After arriving at Michael and Angela's house, Angela texted Trent to let him know they had arrived.

While at the house, Angela testified she received slurred voicemails from defendant demanding to know the children's location, along with threats to call the police, and accusing Angela of child abduction. Angela never answered defendant's calls. Defendant then drove drunk over to Michael and Angela's house because she was panicked and could not find her children. Defendant arrived and yelled, screamed, and demanded to see her children. Angela locked up the house while her son's nanny called 911.[3] Defendant "pound[ed] on the door" and Angela heard defendant turn the front door's doorknob. Defendant then went from the front door to the dining room and ended up outside the window where the children's room was located. Angela believed defendant "was trying to get in." Defendant testified she texted Michael, Angela, and Trent about the children's whereabouts, but nobody responded.

## II. Subsequent Law Enforcement Investigation

Deputy Lee was dispatched to Angela's house regarding a disturbance. He arrived and parked two houses away from the house and immediately "heard a woman screaming." He walked up to the house's backyard and observed defendant walking towards him. Deputy Lee stopped defendant and placed her in handcuffs. He noticed defendant's eyes were red and watery, she had slurred speech, and he could smell the odor of alcohol emanating from her breath and person. Defendant told Deputy Lee she drove to the house to get her children and "tried to open a bunch of the doors and windows of the house, but they were all closed and locked." She admitted she drank

---

[3]     The People introduced the 911 call (exhibit 1) during their case-in-chief and the jury was provided a transcript of the call (exhibit 2). During the call, defendant is heard screaming and banging on the front door. Additionally, Angela tells dispatch defendant is "[k]icking at the door" and "keeps … yelling at the kids, telling them to open up the door[,] that I am going to jail."

4.

two beers at the rodeo and also drank at her house. Deputy Lee the contacted California Highway Patrol Officer E. Dillon to investigate a possible DUI.[4]

Officer Dillon arrived on scene and contacted defendant. Immediately, he noticed defendant had all the objective signs of being under the influence of alcohol. Defendant admitted to drinking three beers between 10:00 a.m. and 12:00 p.m. She then performed a series of field sobriety tests, which included a preliminary alcohol screening (PAS) test. The PAS test revealed defendant had a BAC of 0.253 percent and 0.241 percent. Based on these observations, Officer Dillon concluded defendant drove while under the influence of alcohol and placed her under arrest. Defendant then provided two breath samples, which revealed a BAC of 0.23 percent and 0.24 percent.[5]

## DISCUSSION

### I. The Trial Court Did Not Abuse Its Discretion in Excluding Deputy Lee's CAD Log Statement

Defendant contends the trial court prejudicially erred and violated both her state and federal constitutional rights to due process and confrontation by refusing to allow defense counsel to question Deputy Lee regarding his prior statement in the CAD log "no crime occurred at the residence." We conclude the trial court did not abuse its discretion in excluding Deputy Lee's CAD log statement because it constituted inadmissible hearsay.

---

[4]  In the CAD log report, Deputy Lee stated, "[defendant] drove to the ex-husband's house and banged on the doors/windows. It was determined no crime occurred at the residence. [Defendant] was evaluated by CHP and arrested for DUI."

[5]  Department of Justice Criminalist J. Miller testified an individual, with defendant's physical characteristics, would have to drink a minimum of 11 to 12 alcoholic beverages to have a BAC of 0.23 percent and 0.24 percent at the time the two breath samples were obtained.

## A. Additional Factual Background

The prosecutor and Deputy Lee had the following exchange during direct examination:

"[PROSECUTOR]: Okay. What did [defendant] tell you she did after that happened?

"[DEPUTY LEE]: [Defendant] drove to Michael's residence to get her kids back.

"[PROSECUTOR]: She told you that was the reason she went to the house, to get the kids back?

"[DEPUTY LEE]: Yes.

"[PROSECUTOR]: What did she tell you she did when she got there?

"[DEPUTY LEE]: She knocked on the doors, windows. Yelled from outside. Nobody would answer. She even tried to open a bunch of doors and windows of the house, but they were all closed and locked. [¶] … [¶]

"[PROSECUTOR]: Okay. Well, did she specifically say what she wanted you to do with her?

"[DEPUTY LEE]: Yes. She told me she wanted me to let her go.

"[PROSECUTOR]: So she could do what?

"[DEPUTY LEE]: Take her kids and leave."

During Deputy Lee's cross-examination, defense counsel requested the CAD log be introduced as an exhibit. The prosecutor asked to approach for a side bar. The following exchange between the prosecutor, defense counsel, and the trial court is as follows:

"(Whereupon, the following was held at sidebar.)

"[PROSECUTOR]: The reason why [defense counsel] wants this in there is because of this statement right here, which calls for a legal conclusion. So I am going to ask for any reference to that statement be prohibited.

"[TRIAL COURT]: Is that your purpose?

6.

"[DEFENSE COUNSEL]: He is an officer who had an opinion as to what he experienced on the scene. That is exactly what he is testifying to here in every account.

"[PROSECUTOR]: It is also hearsay not under any exception.

"[DEFENSE COUNSEL]: Business record exception right here. He testified to what he said.

"[TRIAL COURT]: I will let you ask him if he arrested [defendant] for any crime at the scene.

"[PROSECUTOR]: I am going to object to allowing him to do that.

"[TRIAL COURT]: Why?

"[PROSECUTOR]: Well, what if it is a DV situation and the officer doesn't arrest the person at the scene, we get the case. We file the case. What is the relevance about whether the officer arrested him?

"We have vehicular manslaughter cases I do all the time they don't arrest people on the scene. We charge gross vehicular manslaughter. Whether highway patrol arrested her at the scene and what charges he arrested her for is not important. She was arrested at the scene. We already know that.

"This is an attempt to get in a legal conclusion and that is for the jury to decide.

"[DEFENSE COUNSEL]: It is not getting to the legal conclusion. It is an attempt to get his opinion based on being investigative officer.

"[TRIAL COURT]: I am going to let you ask him if he arrested her for any point. That is not his determination that no crime was committed.

"[DEFENSE COUNSEL]: He arrested for DUI.

"[PROSECUTOR]: Officer Dillon did.

"[TRIAL COURT]: He didn't make the arrest. You can ask him if he arrested her for any crime at the scene."

During cross-examination, the following exchange occurred between Deputy Lee and defense counsel:

7.

"[DEFENSE COUNSEL]: At the scene, did you determine that you needed to arrest [defendant] for any crime?

"[DEPUTY LEE]: Myself personally, no. [¶] … [¶]

"[DEFENSE COUNSEL]: About how far away from the house was [defendant] when you approached?

"[DEPUTY LEE]: Approximately ten feet.

"[DEFENSE COUNSEL]: Ten feet. Did you observe her trying to get into the home?

"[DEPUTY LEE]: No. Like I said, she was walking towards me when I got into the back yard.

"[DEFENSE COUNSEL]: Okay. Did you personally observe any signs of forced entry to the house?

"[DEPUTY LEE]: No."

After the prosecution rested its case, defense counsel again requested to be permitted to recall Deputy Lee as a witness and question him regarding his CAD log statement. The relevant sidebar exchange is as follows:

"[DEFENSE COUNSEL]: I need to be reminded of the objection for not allowing the CAD report in. [B]ecause, I mean, hearsay and everything I looked up says there is an exception to that rule when it comes to police reports, so …

"[TRIAL COURT]: What exception are you looking at, what is on it?

"[DEFENSE COUNSEL]: Section 1280, evidence of writing made as a record.

"[TRIAL COURT]: That is the official record or public record.

"[DEFENSE COUNSEL]: Yeah, writing.

"[TRIAL COURT]: Business record. Because it is a business record doesn't necessarily mean the content of it is automatically an exception.

"[DEFENSE COUNSEL]: Is it based on relevance[?]

8.

"[TRIAL COURT]: Not relevance. It is really still hearsay. The content of the report contains hearsay. Sometimes it may be, but [prosecutor] your view on that is the same?

"[PROSECUTOR]: Yes. Plus in all the trials I have done, [it has] never been a police report ever. It is hearsay. On top of that reason, why counsel wants it in there is because he wants an impermissible legal conclusion in there. So it is improper. It is hearsay. There isn't an exception for it. And it contains legal opinions that are also inadmissible.

"[TRIAL COURT]: All right. I am going to sustain the objection as I did before. I think it does call for a legal conclusion. You can ask him as you did before about what he arrested him [*sic*] for, if he arrested him [*sic*] for anything.

"[PROSECUTOR]: I am going to object to that. It has already been asked and answered. This is not a proper thing to bring it back on.

"[TRIAL COURT]: You asked that question. So I will sustain that objection as to asked and answered.

"[DEFENSE COUNSEL]: On the record, I am going to object. Saying that this is a business record pursuant to Evidence Code [section] 1280, and it should be [a]dmitted by an officer. And him testifying to his duties as an officer, which is to make a determination if a crime has occurred, makes it admissible. His opinion makes it admissible.

"[TRIAL COURT]: You are on the record."

Lastly, during a discussion regarding the admission of exhibits, defense counsel again requested the CAD log be admitted as an exhibit. The relevant exchange is as follows:

"[TRIAL COURT]: Exhibit 6 is the catalog [*sic*].[6]

"[PROSECUTOR]: As the Court has previously ruled, and if not, the People are going to make an objection, that document is hearsay. It is essentially a police report. Police reports are not ever admitted as evidence unless by stipulation by both parties. And the People are not going to enter into that stipulation. [¶] … [¶]

---

**6** Based on the entirety of the argument, it is clear the parties involved were discussing what has been previously described as the CAD log.

"[TRIAL COURT]: [Defense counsel], [e]xhibit [six] is your exhibit. I have already ruled on that.

"Do you want to put anything else on the record with respect to your argument in favor of [e]xhibit [n]umber [six]?

"[DEFENSE COUNSEL]: Beyond what I already said?

"[TRIAL COURT]: Beyond what you have already stated at the bench that this is an appropriate exception to the hearsay.

"[DEFENSE COUNSEL]: I don't want to make this sound like argument, but, I mean I looked at specific cases.

"[TRIAL COURT]: It is argument. You are arguing for the Court to admit it.

"[DEFENSE COUNSEL]: The statement by [the prosecutor] is absolutely incorrect that police reports are never admitted as evidence unless stipulated by parties.

"[PROSECUTOR]: In a criminal jury trial is what I meant to say, counsel.

"[DEFENSE COUNSEL]: But, yeah, there is plenty of case law out there that identifies the hearsay exception that I previously noted and allows it into evidence.

"So I affirm my objection to not allowing that and not allowing me to ask questions about that to the officer pursuant to it being the hearsay exception as a business record from a county employee that was in a normal course, a regular normal course of his business. And it was related to the event that took place that he was the officer at.

"[TRIAL COURT]: Okay. I already excluded this previously, so that will be the order. Number [six] will not be admitted into evidence."

**B.      Standard of Review**

Hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) Hearsay is inadmissible unless some exception to the hearsay rule is satisfied. (*Id.*, subd. (b).)

"We review the trial court's rulings regarding the admissibility of the evidence for an abuse of discretion." (*People v. Mataele* (2022) 13 Cal.5th 372, 413.) "A trial court's decision to admit or exclude evidence ' " 'will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice' " ' … '[and w]e presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise.' " (*Id.* at pp. 413–414.)

### C. Deputy Lee's Prior Statement Does Not Qualify as an "Inconsistent Statement"

Defendant contends she was entitled to impeach Deputy Lee's prior statement in the CAD log because it qualified as an "inconsistent statement."[7] We disagree.

#### i. Applicable Law

"A statement inconsistent with a witness's trial testimony 'is not made inadmissible by the hearsay rule' (Evid. Code, § 1235) so long as the witness either had 'an opportunity to explain or to deny the statement' while testifying or has not been excused from giving further testimony (Evid. Code, § 770, subd. (a))." (*People v. Chhoun* (2021) 11 Cal.5th 1, 44.) " ' "The 'fundamental requirement' of section 1235 is that the statement in fact be *inconsistent* with the witness's trial testimony." [Citation.] " 'Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior statement .…' " ' " (*People v. Homick* (2012) 55 Cal.4th 816,

---

**7** In her opening brief, defendant contends the statement is admissible as an inconsistent statement pursuant to Evidence Code section 1202. However, Evidence Code section 1202, "governs the impeachment of hearsay statements by a declarant who *does not* testify at trial." (*People v. Blacksher* (2011) 52 Cal.4th 769, 806, italics added.) In her reply brief, defendant argues that even if the relevant statute governing the admissibility of Deputy Lee's statement is Evidence Code section 1235, it is still admissible impeachment as a prior inconsistent statement.

859 (*Homick*).) "Admission of inconsistent statements under Evidence Code section 1235 necessarily requires a trial court to make a preliminary finding of inconsistency, otherwise such statements would never be admissible." (*Id*. at p. 860, fn. 28.)

### ii. Forfeiture

Defendant contends Deputy Lee's statement is admissible as an inconsistent statement pursuant to Evidence Code section 1235. However, in the trial court, defendant argued Deputy Lee's CAD log statement was admissible as a business and/or public record pursuant to Evidence Code sections 1271 and 1280, but did not argue its admissibility as an inconsistent statement pursuant to section 1235. Because defendant did not argue below the statement was admissible as an inconsistent statement, the trial court was deprived of the opportunity to make a "preliminary finding of inconsistency," (*Homick*, *supra*, 55 Cal.4th at p. 860, fn. 28), and therefore, this argument is forfeited on appeal. (*People v. Cowan* (2010) 50 Cal.4th 401, 465 [The defendant waived his argument the statement was inadmissible and therefore he waived this contention on appeal.].)

### iii. Analysis

However, in any event, the argument lacks merit. Deputy Lee's statement in the CAD log "[i]t was determined no crime occurred at the residence" was not inconsistent with his trial testimony that "[defendant] drove to Michael's residence to get her kids back." Defendant contends Deputy Lee's trial testimony is inconsistent with his CAD log because "[t]his testimony was essential to the jury's finding that [defendant] committed an attempted residential burglary, as it evidenced an intent to commit felony child endangerment." At the outset, defendant is correct Deputy Lee's testimony was relevant to establish defendant had the requisite felonious intent prior to attempting to break into Angela's house. However, although a jury could interpret Deputy Lee's testimony to determine whether a crime had in fact been committed, that does not make it

12.

inconsistent with his prior statement. Deputy Lee did not testify a crime had occurred at the residence, which would have been inconsistent with his prior statement, but rather was only offering testimony about what he observed and heard. The testimony supported an inference a crime had occurred and may have *contradicted* his CAD log statement, but was not by itself an inconsistent statement. (See *Homick*, *supra*, 55 Cal.4th at p. 859.)

Nonetheless, defendant directs this court to *People v. Corella* (2004) 122 Cal.App.4th 461 (*Corella*) in support of her position. In *Corella*, the victim told a 911 operator and then subsequently a law enforcement officer defendant had struck her in the head. (*Id.* at p. 465.) During the preliminary hearing, the victim recanted and testified "she injured her head in a fall while she and her son were playing near a Jacuzzi" and that her original statement to the officer was untrue. (*Id.* at p. 469.) During the trial, the People did not call the victim as a witness, but rather "relied on hearsay evidence to prove the charged offense .…" (*Id.* at pp. 469–470.) The trial court did not allow defendant to impeach these statements with the victim's preliminary hearing testimony. (*Id.* at p. 470.) The trial court erred in failing to permit this impeachment because "the prosecution introduced [the victim's] hearsay statements to the police, and [therefore the defendant] sought to introduce contrary hearsay evidence from the same declarant," which is permitted under Evidence Code section 1202. (*Id.* at p. 470.) The court continued:

> "The inconsistent hearsay statement by [the victim] at the preliminary hearing provided a critical alternative method for the jury to determine her credibility in the absence of her presence as a live witness at trial. The trial court's exclusion of the inconsistent statement was prejudicial because it prevented the jury from making a credibility decision based on all available evidence." (*Corella*, *supra*, 122 Cal.App.4th at p. 472.)

In *Corella*, the victim's original statements to law enforcement and on the 911 call that the *injuries* to her head were caused by the defendant were clearly inconsistent with her preliminary hearing testimony that the *injuries* were caused by a fall. (*Corella*,

13.

*supra*, 122 Cal.App.4th at pp. 467, 469.) Unlike in *Corella*, Deputy Lee's testimony was not inconsistent with his prior statement. This concept is better demonstrated through an example. In the example, a witness provides a statement to law enforcement it was *sunny* at the time a crime was committed. However, at trial, the witness testifies it was *raining* when the crime was committed. This testimony is clearly inconsistent with the witness's original statement to law enforcement and thus defense counsel could impeach the witness with this prior statement pursuant to Evidence Code section 1235. However, let us assume the witness testifies at the time the crime was committed people were wearing raincoats, the witness observed multiple open umbrellas, and there was precipitation on top of the umbrellas' canopies. Although the witness's testimony contradicts their original statement and a jury could infer from this testimony it was raining when the crime was committed, it is not clearly inconsistent with their original statement and thus defense counsel would not be permitted to impeach the witness with this prior statement pursuant to Evidence Code section 1235. (See *People v. Woodberry* (1970) 10 Cal.App.3d 695, 704 [" 'In order that a witness' present testimony be subject to impeachment, the prior statement must be clearly inconsistent; "[b]ut inconsistency in effect rather than contradiction in express terms is the test." ' " (Italics omitted.)].) Accordingly, Deputy Lee's CAD log statement was inadmissible as an inconsistent statement pursuant to Evidence Code section 1235.

### D. Deputy Lee's Statement is Inadmissible Either as a Business or Public Record

Defendant further contends Deputy Lee's CAD log statement was admissible as a business and/or public record. We again disagree.

#### i. Applicable Law

"Both the business record and official record exceptions require a showing that the writing 'was made at or near the time of the act, condition, or event' (Evid. Code, §§ 1271, subd. (b), 1280, subd. (b)); either 'in the regular course of a business' (*id.*,

14.

§ 1271, subd. (a)) or 'by and within the scope of duty of a public employee' (*id.*, § 1280, subd. (a)); and that 'sources of information and method and time of preparation were such as to indicate [the writing's] trustworthiness' (*id.*, §§ 1271, subd. (d), 1280, subd. (c))." (*People v. Turner* (2020) 10 Cal.5th 786, 822.) "As a general rule, police reports do not fall under the business records exception." (*People v. McVey* (2018) 24 Cal.App.5th 405, 415.) " 'When a record is not made to facilitate business operations but, instead, is primarily created for later use at trial, *it does not qualify as a business record.*' " (*Ibid.*, quoting *People v. Sanchez* (2016) 63 Cal.4th 665, 695, fn. 21, italics added.) Moreover, "[t]he official records exception does not allow the admission of opinions or conclusions. In construing the similar business records exception to the hearsay rule [citation], our Supreme Court stated: '[t]he psychiatrist's opinion that the victim suffered from a sexual psychopathy was merely an opinion, not an act, condition or event within the meaning of the statute.' " (*People v. Hall* (2019) 39 Cal.App.5th 831, 844–845, quoting *People v. Reyes* (1974) 12 Cal.3d 486, 503.)

In *People v. Ayers* (2005) 125 Cal.App.4th 988, this court held the contents of a victim's conversation recorded in a crisis intervention log did not qualify as business records. (*Id.* at pp. 992, 996.) We concluded "the contents were derived from hearsay statements made by [the victim], who did not have an official duty to observe and report the relevant facts … [and] [t]he … forms are analogous to police reports, probation reports, psychiatric evaluations and emergency call logs, none of which qualify as business records because they contain hearsay statements made by participants and bystanders and inadmissible opinions and conclusions. (*Kramer v. Barnes* (1963) 212 Cal.App.2d 440, 446 [police reports]; *People v. Hernandez* (1997) 55 Cal.App.4th 225, 239–240 [search result from database containing information derived from police reports]; *People v. Campos* (1995) 32 Cal.App.4th 304, 309–310 [probation report]; *People v. Reyes*[, *supra*, 12 Cal.3d at pp.] 502–503 [psychiatric evaluation]; *Alvarez v.*

*Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1203–1207 [911 dispatch log].)" (*Ayers*, at p. 994.)

### ii. Analysis

Defense counsel argued prior to Deputy Lee's cross-examination, during their case-in-chief, and during discussions regarding the introduction of exhibits into evidence the CAD log statement was admissible as a business and/or public record. In each instance, the trial court excluded the evidence because the statement constituted an improper legal conclusion. The holding in *People v. Torres* (1995) 33 Cal.App.4th 37 is instructive. In *Torres*, the defendant argued it was improper for an officer to testify a robbery " 'is what happened in this particular case' " because it called for improper opinion testimony. (*Id*. at p. 44.) The court held this testimony was inadmissible because it "consist[ed] of inferences and conclusions which can be drawn as easily and intelligently by the trier of fact as by the witness." (*Id*. at pp. 45, 48.) Specifically, the court found that although "[t]here are some crimes a jury could not determine had occurred without the assistance of expert opinion as to an element of the crime[,] … [r]obbery and extortion … are not among them."[8] (*Id*. at p. 47, fn. omitted.) Additionally, neither are " 'sufficiently beyond common experience' that the jury needs an expert to determine whether they have been committed … [and t]he jury clearly was competent to determine from the evidence and the court's instructions whether [the] defendant intended to rob or extort [the victims]." (*Ibid*.)

---

**8**    For example, "courts have held an expert may testify concerning criminal modus operandi and may offer the opinion that evidence seized by the authorities is of a sort typically used in committing the type of crime charged." (*People v. Prince* (2007) 40 Cal.4th 1179, 1223; see also *People v. Hardy* (1969) 271 Cal.App.2d 322, 327–328 [expert was permitted to "describe[] the modus operandi of a certain class of criminals, thus assisting the jury in determining a factual issue, namely, the defendant's intent when he diverted the victim's attention."].)

16.

Here, the trial court correctly concluded the CAD log statement constituted an inadmissible legal conclusion. The CAD log statement did not qualify as a business and/or public record because "[t]he official records exception does not allow the admission of opinions or conclusions," which is exactly what Deputy Lee offered in his CAD log statement. (*People v. Hall*, *supra*, 39 Cal.App.5th at p. 844.) Although defendant contends the statement was admissible as impeachment, defense counsel argued it was admissible as opinion evidence. Specifically, defense counsel argued the statement was admissible because Deputy Lee "is an officer who had an opinion as to what he experienced on the scene" and "him testifying to his duties as an officer, which is to make a determination if a crime has occurred, makes it admissible." However, Deputy Lee's opinion would not have assisted the jury in determining whether an attempted burglary had occurred because "[t]he jury clearly was competent to determine from the evidence and the court instructions whether defendant intended" to commit a crime. (*People v. Torres*, *supra*, 33 Cal.App.4th at p. 47.) Deputy Lee's prior statement that no crime was committed was inadmissible because "opinions on guilt or innocence … are of no assistance to the trier of fact." (*Ibid.*) Accordingly, Deputy Lee's statement was inadmissible as a business and/or public record.

### E. Defendant's Rights to Due Process and Confrontation Were Not Violated When the Trial Court Excluded Deputy Lee's CAD Log Statement

Defendant further contends the trial court's exclusion of Deputy Lee's prior CAD log statement violated her right to due process, confrontation, and her ability to present a complete defense. We disagree.

#### i. Applicable Law

" 'As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's right to present a defense.' " (*People v. Blacksher*, *supra*, 52 Cal.4th 769 at p. 821.) Our Supreme Court has " 'repeatedly held that "not every

17.

restriction on a defendant's desired method of cross-examination is a constitutional violation. Within the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance." ' " (*People v. Harris* (2008) 43 Cal.4th 1269, 1292.) Therefore, "[a]lthough the complete exclusion of evidence intended to establish an accused's defense may impair his or her right to due process of law, the exclusion of defense evidence on a minor or subsidiary point does not interfere with that constitutional right." (*People v. Cunningham* (2001) 25 Cal.4th 926, 999.)

Here, the trial court concluded "[t]he content of the [CAD log] report contains hearsay" and "it does call for a legal conclusion." Because we conclude Deputy Lee's testimony was inadmissible hearsay and did not qualify as an inconsistent statement *or* a public and/or business record, the trial court's decision to exclude this evidence did not violate defendant's rights to due process, confrontation, and her ability to present a complete defense. (*People v. Williams* (2016) 1 Cal.5th 1166, 1198 ["A defendant has no constitutional right to present evidence that contains hearsay and is lacking in foundation or other indicia of reliability."].) Accordingly, the trial court did not act " ' " ' in an arbitrary, capricious, or absurd manner' " ' " in concluding Deputy Lee's prior statement was inadmissible hearsay and that it constituted inadmissible opinion evidence. (*People v. Mataele*, *supra*, 13 Cal.5th at p. 414.)

### F.     Prejudice

"Although defendant asserts the standard of review is the 'harmless beyond a reasonable doubt' standard prescribed in *Chapman v. California* (1967) 386 U.S. 18, 24, we have held the application of ordinary rules of evidence … does not implicate the federal Constitution, and thus we review allegations of error under the 'reasonable probability' standard of [*People v. Watson* (1956) 46 Cal.2d 818, 836]." (*People v. Marks* (2003) 31 Cal.4th 197, 226–227.) We conclude that even if the trial court erred in excluding Deputy Lee's CAD log statement, defendant was not prejudiced by this error.

18.

Here, defendant contends that "[h]ad the jury learned of these inconsistencies, it is reasonably probable the jury would have found there was a reasonable doubt as to whether [defendant] had the intent to commit felony child endangerment" because "the jury would have had reason to doubt [Deputy Lee's] credibility." However, defendant was not prejudiced for two reasons. First, although defense counsel was not permitted to impeach Deputy Lee with his CAD log statement, defense counsel was still allowed to question him regarding his belief as to whether a crime was committed. During cross-examination, defense counsel asked Deputy Lee, "At the scene, did you determine that you needed to arrest [defendant] for any crime?" and Deputy Lee responded, "Myself personally, no." Deputy Lee admitted he did not believe he needed to arrest defendant for a crime, which is exactly the evidence defense counsel wanted the jury to hear through his CAD log statement. Second, evidence of defendant's felonious intent to commit child endangerment was substantial. Angela testified she heard defendant "pound[] on the door" and turn the front door's doorknob and believed defendant "was trying to get in." In the 911 call, defendant is heard screaming, banging and kicking at the door, and Angela told dispatch defendant "keeps … yelling at the kids, telling them to open up the door[,] that [Angela] [is] going to jail." Moreover, Angela testified defendant went from the front door to the dining room and ended up standing right outside where the children's room was located. Accordingly, irrespective of Deputy Lee's CAD log statement, there was substantial evidence for the jury to conclude defendant had the felonious intent to commit felony child endangerment when she attempted to enter the house.

## II.    The Trial Court Erred in Imposing Identical Fines on Counts II and III

Defendant further contends the trial court erred in imposing identical fines and fees for both counts II and III, which were based on the single act of driving while intoxicated. The People concede error. We accept the People's concession and stay the fines and fees imposed for count III.

### A. Applicable Law

Penal Code section 654, subdivision (a) provides: "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." " 'The purpose of this statute is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime.' " (*People v. Tarris* (2009) 180 Cal.App.4th 612, 626.) When a term of confinement is stayed pursuant to section 654, all fines and fees that also constitute punishment must also be stayed. (*People v. Sharret* (2011) 191 Cal.App.4th 859, 865; *People v. Crittle* (2007) 154 Cal.App.4th 368, 370–371.)

To determine whether a fine or fee constitutes a punishment, depends on " 'whether the Legislature intended the provision to constitute punishment and, if not, whether the provision is so punitive in nature or effect that it must be found to constitute punishment ….' " (*People v. Sharret*, *supra*, 191 Cal.App.4th at p. 865.) Our Supreme Court has held, "[f]ines arising from [criminal] convictions are generally considered punishment." (*People v. Alford* (2007) 42 Cal.4th 749, 757.)

### B. Analysis

Here, the trial court imposed a $1,748 fine for count II, driving under the influence, and a second $1,748 fine for count III, driving while having a 0.08 percent or higher BAC. Although defendant did not object to the fine at sentencing, the claim is not forfeited on appeal. (See *People v. Soto* (2016) 245 Cal.App.4th 1219, 1234 ["When a court imposes multiple punishments in violation of section 654, it acts in excess of its jurisdiction and imposes an unauthorized sentence that can be challenged for the first time on appeal."].) Defendant's convictions for counts II and III arose from a single act of driving under the influence of alcohol to the victim's house. Accordingly, pursuant to section 654, we stay the fines and fees imposed for count III.

20.

**III. The "Nonparticipant Present" Allegation (§ 667.5, Subdivision (c)(21)) Does Not Apply to Attempted First Degree Burglary**

As stated above, we ordered supplemental briefing to address the issue of whether the jury could find true the "nonparticipant present" allegation as to count I. Defendant contends the jury improperly found true the "nonparticipant present" allegation because she was convicted of attempted first degree burglary, which is not included among the offenses supporting a finding under section 667.5. The People concede error. We accept the People's concession and vacate the "nonparticipant present" allegation from count I.

**A. Applicable Law**

Section 667.5, subdivision (a) authorizes a sentence enhancement where a prior felony conviction and the new offense are "violent felonies specified in subdivision (c)." Subdivision (c)(21) specifies, "[a]ny burglary of the first degree, as defined in subdivision (a) of [s]ection 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." (§ 667.5, subd. (c)(21).) Section 460, subdivision (a), defines "[e]very burglary of an inhabited dwelling house" as burglary of the first degree.

"The plain meaning of section 667.5, subdivision (c)(21) is that a ' "violent felony" ' is any first degree burglary where another person, not an accomplice, was present during the burglary's commission. The statute does not refer to attempted burglary, and except as specified, '[s]ection 667.5, subdivision (a), does not apply to attempts to commit the crimes referred to as violent felonies.' " (*People v. Bedolla* (2018) 28 Cal.App.5th 535, 541, quoting *People v. Ibarra* (1982) 134 Cal.App.3d 413, 425.)

**B. Analysis**

Here, the jury convicted defendant of count I (§§ 459, subd. (a), 664) and found true the "nonparticipant present" allegation (§ 667.5, subd. (c)(2)). Accordingly, the "nonparticipant present" allegation must be stricken because defendant was convicted of

*attempted* first degree burglary, which is not a violent felony. (*People v. Bedolla*, *supra*, 28 Cal.App.5th at p. 541.)

## **DISPOSITION**

The judgment is modified to vacate the $1,748 fine associated with count III. Further, the "nonparticipant present" allegation is vacated as to count I. As modified, the judgment is affirmed.