

## Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00177-CR

Kevin **DEBNAM**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CR6484
Honorable Stephanie R. Boyd, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Beth Watkins, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: June 28, 2023

AFFIRMED

This appeal concerns the admission of evidence against Appellant Kevin Debnam at his trial for aggravated assault with a deadly weapon. We affirm the trial court's judgment.

### BACKGROUND

One evening after dark, Michael Crews discovered Debnam burglarizing his car. Debnam was inside the car, which was parked in the Crews' driveway. Michael pulled Debnam out of the car and began to fight him. While fighting him, Michael heard a loud bang. He realized the bang

came from Debnam's gun. Michael continued fighting Debnam, keeping him close to prevent Debnam from aiming his gun at him. The gun went off again but did not strike Michael.

Jacqueline Crews, Michael's wife, came out of the house to investigate the gunshot sounds. She saw Michael fighting with Debnam. Michael yelled for Jacqueline to get his brother, Drew. Jacqueline went inside to find Drew. While inside, Jacqueline grabbed her phone to call 911.

When Drew stepped outside the house, he found Michael fighting with Debnam and joined in the fight. Then Michael heard Drew scream, "He stabbed me! He stabbed me!" The men scrambled to take Debnam's knife, and Debnam bit Drew on the hand.

Michael's neighbor, Michael Tovar, heard the gunshots. It took him a moment to figure out where the sound had originated, but once he collected his flashlight and used it to illuminate the Crews' driveway, he saw that Debnam had a gun and that Michael was holding Debnam in a chokehold. Tovar approached the men and stepped on Debnam's wrist to remove the gun from his hand. Michael either asked Tovar for his help or to call the police. Tovar took the gun to his house and placed it on his porch while he waited for the police. Michael and Drew held Debnam down until police arrived.

Debnam was charged with aggravated assault for shooting a deadly weapon at Michael. At trial, a jury heard the witnesses testify on the altercation in the Crews' driveway and watched a video of San Antonio Police Department's Detective Michael Alvarez's interview with Debnam about the assault. The jury convicted Debnam of the aggravated assault, as charged. The trial court sentenced Debnam to thirteen years in prison. Debnam now appeals the judgment, arguing that much of the evidence against him was erroneously admitted.

### APPELLANT'S ISSUES

In this appeal, Debnam raises four issues. First, he argues that the trial court erroneously admitted a 911 call recording because the statements in the recording were testimonial and did not

properly qualify as excited utterances. Second, he argues that the trial court should not have admitted testimony regarding a stabbing that occurred during the aggravated assault, because the allegation amounted to an uncharged and therefore extraneous act under Texas Rule of Evidence 404(b). Third, he argues that the trial court should not have re-admitted or considered evidence of the stabbing in the punishment phase. Fourth, he argues that the trial court erroneously admitted and published a recording of his interrogation though he could be heard requesting an attorney.

In addressing Debnam's issues on appeal, we will begin with Debnam's constitutional claims.

### INTERROGATION VIDEO EVIDENCE AT TRIAL

**A.     Parties' Arguments**

Debnam argues that he requested an attorney during his interrogation by Detective Alvarez, that this request could be heard in his interrogation video as it was being published to the jury, and that any statements following his request should not have been published to the jury. He argues that the continued publication of his interrogation after his request could be heard on the video violated his constitutional rights.

The State contends that 1) Debnam waived his argument by failing to identify at trial where his request for counsel occurs in the interrogation video, 2) he inadequately briefed his complaint by similarly failing to identify where in the interrogation video his request for counsel occurs, and 3) he failed to establish harm.

**B.     Standard of Review**

In general, this court reviews a trial court's evidentiary rulings for an abuse of discretion. *See Hernandez v. State*, 825 S.W.2d 765, 770 (Tex. App.—El Paso 1992, no pet.). In reviewing a trial court's decision to admit confession evidence obtained during a police interrogation, this court reviews de novo those questions not turning on credibility and demeanor. *See Umana v. State*,

447 S.W.3d 346, 351 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

**C.     Law**

Generally, a coerced confession[1] should not be admitted at trial.[2] *See Zuliani v. State*, 903 S.W.2d 812, 820 (Tex. App.—Austin 1995, pet. ref'd).  If a coerced confession is presented at trial, and the accused properly objects,[3] then the trial court can reasonably be expected to sustain the objection. *See Herrera v. State*, 241 S.W.3d 520, 538 (Tex. Crim. App. 2007) (Johnson, J., dissenting); *accord Zuliani*, 903 S.W.2d at 820.  This may be true, even if the objection occurs after admission and during publication of the confession evidence. *See Mendoza v. State*, No. 08-17-00230-CR, 2019 WL 6271271, at *4 (Tex. App.—El Paso Nov. 25, 2019, pet. ref'd) (mem. op., not designated for publication) (citing *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

**D.     Analysis**

Here, Debnam's attorney objected to the continued publication of the State's interrogation video at trial when he believed he heard Debnam request an attorney. *See Mendoza*, 2019 WL 6271271, at *4.  The trial court excused the jury to review Debnam's objection and the interrogation video.  Outside the presence of the jury, the State re-played the portion of the video

---

[1] A confession may be considered coerced, for example, if it is obtained through continued questioning after a suspect has requested an attorney. *See Muniz v. State*, 851 S.W.2d 238, 253 (Tex. Crim. App. 1993) (citing *Smith v. Illinois*, 469 U.S. 91, 98 (1984)).

[2] This rule is not without exceptions, such as "door opening" by the accused. *See Leday v. State*, 983 S.W.2d 713, 716 (Tex. Crim. App. 1998); *Lykins v. State*, 784 S.W.2d 32, 36 (Tex. Crim. App. 1989) (citing *Harris v. New York*, 401 U.S. 222, 226 (1971)).

[3] A proper objection depends on whether 1) the accused objects as soon as the basis for his objection becomes apparent and 2) the accused states his objection with sufficient specificity (or the grounds for the objection are contextually apparent). *See* TEX. R. EVID. 103(a)(1); *Mendoza v. State*, No. 08-17-00230-CR, 2019 WL 6271271, at *4 (Tex. App.—El Paso Nov. 25, 2019, pet. ref'd) (mem. op., not designated for publication) (citing *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016)).

that elicited Debnam's objection.[4]  *See Lankston*, 827 S.W.2d at 909.  The State argued, and the trial court agreed, that no request for counsel could be heard.  Debnam's attorney maintained his objection that a request for counsel could be heard.  The trial court overruled Debnam's objection.

In reviewing the interrogation video de novo, we agree that a request for counsel could not be heard in the recording.  We conclude that the trial court did not err in overruling Debnam's objection.  *See Umana*, 447 S.W.3d at 351.  Accordingly, we do not reach the State's argument concerning harm.  *See Zuliani*, 903 S.W.2d at 823.

Debnam's fourth issue concerning the interrogation video evidence is overruled.  We now move on to Debnam's first issue, the admission of 911 call evidence.

## 911 CALL EVIDENCE AT TRIAL

### A.     Parties' Arguments

Debnam contends the trial court abused its discretion by admitting the 911 call in this case because it was testimonial in nature and not qualified to be admitted under the excited utterance exception to the rule against hearsay.

The State disagrees and contends the 911 call squarely fell under the excited utterance exception to the rule against hearsay and was properly admitted.

### B.     Standard of Review

Typically, an appellate court reviews a trial court's determination of whether evidence is admissible under the excited utterance exception to the hearsay rule only for an abuse of discretion.  *See Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006) (citing *Zuliani*, 903 S.W.2d at

---

[4] According to the reporter's record, the parties and the trial court understood that the objectionable portion of the interrogation video began at internal timestamp 1:34:24. Therefore, Debnam's objection met the requirement of Rule 103(a)(1)(B).  *See* TEX. R. EVID. 103(a)(1)(B).

595–96). But "we review a constitutional legal ruling, i.e., whether a statement is testimonial or non-testimonial, de novo." *Id*. (citing *Lilly v. Virginia*, 527 U.S. 116, 137 (1999)).

**C. Law**

Out-of-court statements offered for the truth of the matter asserted are generally inadmissible at trial. *See* TEX. R. EVID. 801(d), 802; *Zuliani*, 903 S.W.2d at 595. But there are several exceptions to the rule against hearsay, including excited utterances. *See* TEX. R. EVID. 803; *Zuliani*, 903 S.W.2d at 595.

An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2); *McCarty v. State*, 257 S.W.3d 238, 240 (Tex. Crim. App. 2008). Such an utterance is considered trustworthy "because it represents an event speaking through the person rather than the person speaking about the event." *Zuliani*, 903 S.W.2d at 595 (citing *Evans v. State*, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972)). 911 calls are often an example of this exception. *See, e.g., Harrell v. State*, No. 05-18-01133-CR, 2021 WL 4438150, at *3 (Tex. App.—Dallas Sept. 28, 2021, no pet.) (mem. op., not designated for publication) (citing *Davis v. Washington*, 547 U.S. 813, 827–28 (2006); *Gaeta v. State*, No. 05-14-01202-CR, 2016 WL 3870665, at *5 (Tex. App.—Dallas July 12, 2016, no pet.) (mem. op., not designated for publication); *Neal v. State*, 186 S.W.3d 690, 693–94 (Tex. App.—Dallas 2006, no pet.); *Kearney v. State*, 181 S.W.3d 438, 441–43 (Tex. App.—Waco 2005, pet. ref'd)).

Whether a particular 911 call qualifies as an excited utterance can depend on the time elapsed since the startling event and whether the statement was in response to a question, though these factors are not necessarily dispositive. *See Zuliani*, 903 S.W.2d at 595 (citing *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001), *overruled on other grounds by Najar v. State*, 618 S.W.3d 366, 372 (Tex. Crim. App. 2021); *Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim.

App. 1995), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249, 263 n. 18 (Tex. Crim. App. 1998)).

> *The critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" or condition at the time of the statement. McFarland [v. State]*, 845 S.W.2d [824, 846 (Tex. Crim. App. 1992), *overruled on other grounds by Mosley*, 983 S.W.2d at 263 n.18]. Stated differently, a reviewing court must determine whether the statement was made "under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Fowler v. State*, 379 S.W.2d 345, 347 (Tex. Crim. App. 1964).

*Id*. (emphasis added).

Once a court decides that a statement qualifies as an excited utterance, it must also decide whether a statement is testimonial, i.e., whether the declarant "comprehend[s] the larger significance of his words" in a legal sense. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006) (citing *United States v. Brito*, 427 F.3d 53, 60 (1st Cir. 2005)). This inquiry is both separate and related. *Id*. Its determination will turn on "whether the declarant knowingly provided the functional equivalent of testimony to a government agent." *Kearney*, 181 S.W.3d at 443 (quoting *State v. Davis*, 111 P.3d 844, 849 (Wash. 2005)). We consider that "[i]n most cases, one who calls 911 for emergency help is not 'bearing witness,' whereas calls made to the police simply to report a crime may conceivably be considered testimonial." *Id*.

## D.    Analysis

In the 911 call admitted at trial, Jacquelyn can immediately be heard shouting, "Don't let him go!" As soon as the operator begins speaking, Jacquelyn breathlessly exclaims, "Hello—yes! I need a—I need a police!" As the operator asks for Jacquelyn's address, Jacquelyn spits out in a panicked voice that someone was in the driveway; the two voices overlap. Jacquelyn then gives her address, sounding as though she is hyperventilating. She says "San Antonio" twice at the end

of it. The operator asks if any weapons are involved, and Jacquelyn answers, "Yes! They shot at my husband! He shot at my husband!"

At trial, Jacquelyn testified that she heard two gunshots close to her house and ran outside. She heard scuffling next to her brother-in-law's car and saw her husband holding a stranger on the ground. He screamed at her to get his brother. She ran inside to get her brother-in-law and to grab her phone. Jacquelyn's brother-in-law ran outside, and then Jacquelyn called 911.

Appellant now argues that Jacquelyn was "presumably . . . repeating what [her husband] told her." But there is no testimony that Jacquelyn received information from her husband to recite during the 911 call. In this respect, Debnam's characterization of the evidence is imprecise.

Considering the factors described in *Zuliani*, we note, first, that no time elapsed between the startling event and Jacquelyn's 911 call. *See Zuliani*, 903 S.W.2d at 595. Rather, the record shows that the conflict in the Crews' driveway was continuing to develop while she was on the 911 call. Next, Jacquelyn was answering questions posed by the 911 operator, but the questions did not "bear any of the official, formal qualities of the police interactions the Confrontation Clause was intended to protect against." *Kearney*, 181 S.W.3d at 442 (citing *People v. Corella*, 18 Cal. Rptr. 3d 770, 776 (Cal. Ct. App. 2004)). Instead, Jacquelyn's answers were explicitly given to obtain police assistance. *See id*. In deciding whether Jacquelyn "'was still dominated by the emotions, excitement, fear, or pain of the event' or condition at the time of the statement," we consider that Jacquelyn sounded breathless and panicked and that she was describing an event that epitomizes the type expected to elicit an excited utterance. *See id*. We conclude that the circumstances described in the record led to a reasonable inference that Jacquelyn's statements during the 911 call "resulted from impulse rather than reason and reflection." *See Zuliani*, 903 S.W.2d at 595. Therefore, Jacquelyn's 911 call reasonably qualified as an excited utterance as defined in Rule 803(2). *See* TEX. R. EVID. 803(2).

In considering whether Jacquelyn's 911 call was testimonial, we conclude that it was not. There is no indication in the record that Jacquelyn comprehended the larger legal significance of her statements while she called for police assistance. *See Wall*, 184 S.W.3d at 742.

Based on the evidence, the trial court did not abuse its discretion by admitting the 911 call recording at trial. *See Zuliani*, 903 S.W.2d at 595; *Wall*, 184 S.W.3d at 742. Debnam's first issue is overruled.

#### UNCHARGED ACTS AT TRIAL

**A.     Parties' Arguments**

In his second issue, Debnam argues that the trial court allowed stabbing evidence in a gun assault case in violation of Rule 404(b), which prohibits admitting evidence of uncharged acts to prove that a defendant acted in conformity with his character. Debnam also complains that the State filed no pretrial notice of its intent to introduce the uncharged stabbing act. The State argues that 1) Debnam waived this argument at trial, and 2) if he did not waive it, the stabbing evidence was admissible as inextricably interwoven with the charged gun assault crime. As "same transaction context evidence," the stabbing evidence would require no advance notice of intent to admit.

**B.     Standard of Review**

"The trial court has wide discretion in determining the admissibility of evidence under rules 403 and 404(b), and its ruling will not be disturbed on appeal absent a showing of abuse of discretion." *McDonald v. State*, 829 S.W.2d 378, 380 (Tex. App.—Texarkana 1992, no pet.) (citing *Montgomery v. State*, 810 S.W.2d 372, 377 (Tex. Crim. App. 1990)).

**C.**     **Law**

*1.  Other Acts Evidence Under Rule 404(b)*

Under Rule 404(b), evidence of an accused's extraneous acts is inadmissible to prove an accused's character and actions in conformity.  *See* TEX. R. EVID. 404(b)(1); *Redmond v. State*, 629 S.W.3d 534, 542 (Tex. App.—Fort Worth 2021, pet. ref'd).  But "other acts" evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  *See* TEX. R. EVID. 404(b)(2); *Valdesgalvan v. State*, 664 S.W.3d 407, 413 (Tex. App.—Fort Worth 2023, no pet. h.).  If an accused makes a pretrial request for disclosure of "other acts" evidence, then the State must file a notice of intent—unless the evidence arises from the same transaction as the charged offense and provides context.  *See* TEX. R. EVID. 404(b)(2); *Gonzalez v. State*, 541 S.W.3d 306, 310 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Worthy v. State*, 312 S.W.3d 34, 37 (Tex. Crim. App. 2010).

*2.  Same Transaction Contextual Evidence*

"Same transaction contextual evidence" is information that is "essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven."  *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993) (citing *Mayes v. State*, 816 S.W.2d 79, 86 n. 4 (Tex. Crim. App. 1991)).  It requires no notice of intent.  *Worthy*, 312 S.W.3d at 37 (citing TEX. R. EVID. 404(b)(2)).  "[A] jury [simply] has a right to hear what occurred immediately before and after the offense in order to realistically evaluate the evidence," because events do not occur in a vacuum.  *McDonald v. State*, 148 S.W.3d 598, 601 (Tex. App.—Houston [14th Dist.] 2004) (citing *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000)).  But the contextual evidence must nevertheless be necessary to assist the jurors' understanding, "either because: (1) several offenses are so intermixed or connected as to form a single, indivisible criminal transaction, such that in narrating the one, it is impracticable to avoid

describing the other; or (2) the same transaction contextual evidence tends to establish some evidentiary fact, such as motive or intent." *Id*. (citing *Rogers v. State*, 853 S.W.2d 29, 33–34 (Tex. Crim. App. 1993); *Wyatt v. State*, 23 S.W.3d 18, 25–26 (Tex. Crim. App. 2000)).

### 3. Waiver

If, however, an accused fails to lodge an objection against Rule 404(b) evidence, then the testimony or exhibit will not be subject to evaluation under this rubric on appeal. *See* TEX. R. APP. P. 33.1(a); *Webb v. State*, 557 S.W.3d 690, 698 (Tex. App.—Texarkana 2018, pet. ref'd) (citing *Conrad v. State*, 10 S.W.3d 43, 46 (Tex. App.—Texarkana 1999, pet. ref'd)). "A party waives error regarding the erroneous admission of evidence if the same or substantially similar evidence has been previously admitted in the proceeding without objection." *Webb*, 557 S.W.3d at 698 (citing *Conrad*, 10 S.W.3d at 46).

### D.    Analysis

At trial, Michael testified that Debnam stabbed his brother:

*Q:    What happened next after you and Drew were on top of—*

*A:    I was holding him down. Next thing I know, I heard my brother scream, "He stabbed me! He stabbed me!" So then, I guess, we figured he had a knife, too. And we had—we got that from him, too.*

*Q:    Did you see the knife in his hand?*

*A    I didn't see the knife in his hand until after the—after everything was done, the scuffle was over.*

*Q:    Okay. And so where did he stab your brother?*

*A:    The leg and then the hand.*

Debnam did not object.

Later, when Drew testified, Debnam objected to photographs of the knife used to stab Drew as irrelevant, since the charged crime did not include "this alleged knife incident." The State responded that the evidence belonged to the same transaction as the shooting and provided context. The trial court overruled Debnam's objection and admitted the photographs. We now conclude that Debnam waived any error as to his relevance objection because substantially similar evidence was admitted during Michael's testimony without objection. *See Webb*, 557 S.W.3d at 698.

We now turn to Debnam's third issue.

### UNCHARGED ACTS IN THE PUNISHMENT PHASE

**A.     Parties' Arguments**

Debnam argues that evidence relating to the stabbing of Michael's brother, Drew, was unadjudicated and irrelevant as to Debnam's aggravated assault against Michael. Debnam argues that stabbing evidence should not have been admitted or considered during the punishment phase of his aggravated assault trial relating to Michael.

The State argues that the trial court acted within its discretion to admit and consider evidence of Drew's stabbing during the punishment phase of Debnam's aggravated assault trial relating to Michael.

**B.     Standard of Review**

Like guilt-innocence phase rulings, we review a trial court's punishment phase rulings as to the admissibility of extraneous offense evidence under an abuse of discretion standard. *See Lamb v. State*, 186 S.W.3d 136, 141 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Roberts v. State*, 29 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd)). But at this phase, evidence that may not have been deemed admissible during the guilt-innocence phase may be deemed admissible if relevant to punishment. *Id*. (citing TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *Henderson v. State*, 29 S.W.3d 616, 626 (Tex. App.—Houston [1st Dist.] 2000, pet.

- 12 -

ref'd)). The trial court "is the authority on the threshold issue of the admissibility of relevant evidence during the punishment phase." *Id*. (citing *Mitchell v. State*, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996)). "As long as the trial court's ruling was within the 'zone of reasonable disagreement,' there is no abuse of discretion, and we must uphold the ruling." *Id*. (citing *Roberts*, 29 S.W.3d at 600).

## C.    Law

As noted, under the Texas Code of Criminal Procedure, the trial court could deem relevant and admissible a broad range of evidence in the punishment trial phase, including evidence of an unadjudicated act:

> [E]vidence may be offered by the [S]tate and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *accord Bluitt v. State*, 137 S.W.3d 51 (Tex. Crim. App. 2004). "Same transaction contextual evidence"[5] is generally considered admissible at punishment. *See Ramos v. State*, No. 01-14-00831-CR, 2015 WL 6486647, at *3 (Tex. App.—Houston [1st Dist.] Oct. 27, 2015, no pet.) (mem. op., not designated for publication) (citing *Bluitt*, 137 S.W.3d at 54).

---

[5] As stated in the previous section, "[s]ame-transaction contextual evidence is evidence of another crime that is so 'intermixed, blended, or connected with' the charged crime that it forms an indivisible criminal transaction." *Ramos v. State*, No. 01-14-00831-CR, 2015 WL 6486647, at *3 (Tex. App.—Houston [1st Dist.] Oct. 27, 2015, no pet.) (mem. op., not designated for publication) (citing *Lamb v. State*, 186 S.W.3d 136, 141 (Tex. App.—Houston [1st Dist.] 2005, no pet.)).

But more importantly, "[a] reoffer of guilt-innocence evidence at the punishment phase has 'no effect on the use of that evidence in the punishment phase of trial,' as the jury is free to consider guilt-innocence evidence during the punishment phase." *See Ramos*, 2015 WL 6486647, at *3 (citing *Rayme v. State*, 178 S.W.3d 21, 27 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd)).

**D.      Analysis**

In the last section, we concluded that Debnam waived his complaint regarding stabbing evidence during the guilt-innocence phase of his trial. Notwithstanding the trial court's broad discretion to admit evidence it deems relevant at sentencing, our conclusion regarding Debnam's waiver remains the same and similarly applies: Debnam waived his trial objection to stabbing evidence. *See* TEX. R. APP. P. 33.1(a); *Rayme*, 178 S.W.3d at 27. Given that evidence admitted during the guilt-innocence phase may be considered during the punishment phase of trial, the trial court did not abuse its discretion by overruling Debnam's objection to stabbing evidence in the punishment phase. His third issue is overruled.

CONCLUSION

Based on the evidence, we conclude (1) the trial court did not err by allowing the State to continue publishing its interrogation video after Debnam's Fifth Amendment *Miranda* objection, (2) the trial court did not err by admitting the State's recording of Jacqueline Crews' 911 call, (3) Debnam waived any objection regarding the admission of stabbing evidence during the guilt-innocence phase of his trial, and (4) Debnam waived any objection regarding the admission of stabbing evidence during the punishment phase of his trial. Accordingly, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

Do Not Publish